**STATE of Delaware, Plaintiff,**

v.

**William E. JOHNSON, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: April 11, 1989.
Decided: April 13, 1989.

Lillian M. Moore, Dept. of Justice, Wilmington, for plaintiff.

Nancy Jane Perillo, Office of the Public Defender, Wilmington, for defendant.

OPINION

BARRON, Judge.

The defendant in this action filed on February 28, 1989, a motion to dismiss the indictment in the above-captioned case on the ground that the State has violated the

defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution and under Article I, § 7 of the Delaware Constitution and, with reliance on Rule 48(b) of the Superior Court Rules of Criminal Procedure, that the State has brought the case forward with unnecessary delay, thus entitling the defendant to a dismissal of the charges against him. Since the filing of the motion, the parties have submitted memoranda supporting and opposing said motion. Additionally, a hearing on the motion was held on April 10th and 11th, 1989 with several witnesses testifying including the complaining witness, Roberta Pack, the defendant, William E. Johnson, the complaining witness' Probation Officer, John Williamson, the Chief Investigating Officer, Det. John Whalen, Deputy Attorney General Marsha Kramarck, Susan Sklut, the defendant's Mental Health Counselor, and Jane Luke, of Family Services Delaware, Inc., who counseled the complaining witness on one occasion after the incident leading to the indictment. No purpose would be served in reviewing each witness' testimony. In brief, the defendant contends that his anxiety level has been pronounced due to the charges pending against him. Further, he contends that the State was guilty of prosecutorial manipulation regarding the *nolle prosequi* of the first indictment which was entered on March 22, 1988. The State maintains that it has acted in good faith throughout the proceedings connected with this case, and that there has been no prejudice to the defendant justifying a dismissal of the second indictment. The facts giving rise to this motion are as follows:

## I.

The defendant was initially arrested on October 2, 1987 for allegedly committing assault in the second degree, assault in the first degree and two counts of unlawful sexual intercourse in the first degree on or about September 5, 1987. Upon his arrest, the defendant was committed in default of secured bail. He was indicted on the four offenses on November 25, 1987, and he was arraigned on December 2, 1987, at which time he entered "not guilty" pleas to all charges. On the first trial date, February 22, 1988, the State was not prepared to proceed because the alleged victim, Roberta Pack, was unavailable. Defendant contends that her unavailability was due to the fact that Ms. Pack was a fugitive on violation of probation charges then pending against her, and her whereabouts were unknown. The State contends that Ms. Pack was "on the run" because of fear of the defendant's violent proclivities. In any event, the defendant did not oppose a continuance of the case to a later date, but he requested that the new trial date be designated as a mandatory trial date for the State, giving him the option of moving for a dismissal if the alleged victim remained unavailable. The Court gave the case a mandatory trial date since it was under the impression that the case had been on for trial for the third time. In actuality, it was the first scheduled trial date. The new trial date was set for March 23, 1988. When the State realized that Ms. Pack remained unavailable as of March 22, 1988, the prosecutor, in open Court, entered a *nolle prosequi* on that date, resulting in the release of the defendant. The prosecutor, Ms. Kramarck, also, in open Court, pointed out that the State intended to reindict the defendant once the complaining witness had been located.

By letter dated April 10, 1988, defense counsel sought to obtain a ruling from the Court that the prosecution could not be reinstituted at a future time in the event of locating the alleged victim. The Court, by letter dated April 12, 1988, declined to address the issue until such time as the State attempted to reinstate the charges.[1]

During the spring of 1988, Roberta Pack was located and incarcerated for violating the terms of her probation. On August 3, 1988, the Grand Jury issued a second indictment against the defendant on the same charges as contained in the initial indictment. A Rule 9 warrant was issued

---

1. The Court's unwillingness to take immediate action on defendant's request belies the defendant's contention that the Court had been manipulated by the State.

and, on or about January 17, 1989, the defendant was arrested on that warrant. Bail was set in an amount which the defendant was unable to post. He has been held in default of that bail since January 17, 1989. On January 25, 1989, he entered pleas of "not guilty" on the second indictment. The case was assigned a February 15, 1989 trial date but was continued to April 10, 1989, at the defendant's request. The April 10th trial date was employed as the hearing date on the defendant's motion. Trial is now scheduled for April 17, 1989, assuming a denial of defendant's motion.

It is against this background that defendant moves to dismiss the second indictment. Defendant advances three arguments which, he contends, must result in the dismissal of all charges against him, one of the arguments being predicated on the Sixth Amendment Right To Speedy Trial Clause and the corollary provision of the Delaware Constitution, Article I, § 7.

## II.

### A.

The Sixth Amendment to the United States Constitution guarantees to every criminal defendant the right to a speedy trial. This Amendment states, in pertinent part, that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...[2]

2. The Delaware Constitution guarantees the same right. Article I, § 7 of the Delaware Constitution of 1897 provides, in pertinent part, that, "In all criminal prosecutions, the accused hath a right to ... a speedy and public trial ..." The scope of Article I, § 7 parallels that of the Sixth Amendment to the United States Constitution. *See, Fensterer v. State,* Del.Supr., 493 A.2d 959, 964 (1985), rev'd on other grounds, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1986).

3. Both the Supreme Court of the United States and the Supreme Court of Delaware have declined to extend the reach of the amendment to the period prior to arrest or formal charge. *United States v. Marion, supra; Preston v. State, supra.*

4. The first indictment followed on November 25, 1987.

■ The speedy trial clause of the Sixth Amendment is considered as a fundamental right made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

The Sixth Amendment's speedy trial right attaches either upon arrest or indictment of the accused.

> ... [I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of the speedy trial provision of the Sixth Amendment.

*United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Preston v. State,* Del.Supr., 338 A.2d 562 (1975).

■ We thus see that it is the time of arrest or indictment which activates the pendulum of the speedy trial clock.[3] Here, defendant was first arrested on October 2, 1987.[4] The charges were *nolle prossed* on March 22, 1988. The defendant was reindicted on August 3, 1988.[5] Assuming trial takes place on April 17, 1989, as now scheduled, the period from initial arrest to trial is approximately 18½ months. This period must be reduced for speedy trial purposes, however, for delays attributable to the defendant or for those portions of the total period during which the defendant was neither under indictment nor subjected to any official restraint. Clearly, the period of delay from February 15, 1989 to April 17,

5. The rearrest occurred on January 17, 1989. For purposes of this opinion, I shall assume, without deciding, that the reactivation of the speedy trial clock commenced on the date of reindictment. I do so with the knowledge that substantial restrictions on the defendant's liberty did not reoccur until the date of his rearrest, to wit: January 17, 1989. In other words, for the purposes of this motion, I give the defendant the benefit of the doubt with regard to the period between August 3, 1988 and January 17, 1989. I note that the second indictment was treated as a warrant for the defendant's arrest pursuant to the provisions of Rule 9 of the Superior Court Rules of Criminal Procedure. It could be argued that the second indictment served merely as an arrest warrant and that the Speedy Trial Clause would not be activated until the defendant's arrest thereunder. I leave for a closer case the resolution of this issue.

1989 was attributable to the defendant who on February 15, 1989 requested a continuance. Thus, the 18½ month period is reduced by approximately 2 months.

We now turn to the period between March 22, 1988, the date the defendant regained his freedom resulting from the State entering a *nolle prosequi* on the original indictment, and August 3, 1988, the date the Grand Jury returned the second indictment, a period of some 4 months and 10 days. Bearing in mind that the "speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges," *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), it is difficult to see where the Sixth Amendment has been implicated during this period where the defendant was free to go about his business. With "no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is no longer the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" *United States v. Loud Hawk, et al.*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. MacDonald, supra.* I hold that the period between March 22, 1988 and August 3, 1988 should not be counted towards a claim under the Speedy Trial Clause, since during that period the defendant was neither incarcerated nor subjected to other substantial restrictions on his liberty.

With the above two reductions in mind, the 18½ month period must be reduced by almost 6½ months, leaving a little more than one year as the length of delay attributable to the State. The Court notes that of this period, the defendant has been incarcerated for approximately 8 months and 10 days.

### B.

In making a determination as to whether a defendant's right to a speedy trial has been violated, the Court will consider the four factors set forth in the case of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There, the Supreme Court established four factors to be considered in assessing whether a defendant's right to a speedy trial has been violated. They are: The length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

With regard to the first factor, the Court stated that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors. ... [T]he length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker v. Wingo*, 407 U.S. at 530–531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. As stated, in compiling the period of delay, any period thereof which is attributable to the defendant should be subtracted from the equation. *Barker v. Wingo, supra.* Further, under the rule of *MacDonald*, when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a Court should not weigh that time towards a claim under the Speedy Trial Clause. *United States v. Loud Hawk, supra.* Here, the length of delay attributable to the State is just more than 1 year. While I do not find this period of delay to be presumptively prejudicial, I shall, nevertheless, examine the other three *Barker* factors.

The reason for the delay has not been untoward. The State has a legitimate obligation to bring to the bar of justice persons accused of committing serious crimes against its citizens. When the State learned on March 22, 1988 that the alleged victim was still unavailable, with whereabouts unknown, it chose to defer prosecution until and unless the alleged victim resurfaced. The decision to *nolle pros* was

made openly and candidly. The dilemma facing the State was not of its choosing. The State's concern was legitimate, its actions were reasonable and were carried out in good faith.

With regard to the third factor, the defendant asserted his Sixth Amendment right to a speedy trial on February 28, 1989 when he filed his motion to dismiss with the Court. It can hardly be said that his assertions of that right have been repeatedly and vociferously made. Nevertheless, the fact that he did assert his right to a speedy trial prior to the commencement of the trial is supportive of his claim of a denial of his right to same.

The fourth factor, however, belies his assertion. In assessing prejudice to the defendant, the Court should examine the goals of the speedy trial right, in particular (1) to prevent oppressive incarceration, (2) to minimize the anxiety of the defendant, and most importantly, (3) to limit the possibility of an impaired defense. *See, State v. Cunningham*, Del.Super., 405 A.2d 706 (1979); *Barker v. Wingo, supra.*

The defendant has been incarcerated as a pretrial detentioner for approximately 8½ months. Given the nature of the charges against the defendant, two of which carry life sentences, the Court cannot say that this 8½ month period is "oppressive". Nor can the defendant claim any greater degree of anxiety than normally accompanies a person charged with having committed serious crimes.[6] Finally, I do not believe that the delay has promoted the possibility of an impaired defense. An impaired defense can be shown through evidence of death or disappearance of witnesses, loss of evidence, loss of counsel, or other denial of opportunity to prepare for trial. *Barker v.*

*Wingo, supra.* The defendant does not contend that any of these indications of impairment are present in this case.[7] Recognizing that the danger of an impaired defense resulting from a delay in trial is the most serious source of prejudice, *Barker v. Wingo, supra,* it must also be kept in mind that an affirmative demonstration of prejudice is not needed in order to prove a violation of one's right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

Nevertheless, it must be remembered that:

> The discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. Thus, it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused. *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). (Brennan, J. concurring.)

■ I conclude that the delay in this case has not prejudiced the defendant, and after employing the balancing test as enunciated in *Barker v. Wingo, supra,* I hold that the defendant's Sixth Amendment right to a speedy trial has not been violated.[8]

### III.

Defendant also asserts that the second indictment should be dismissed under Superior Court Criminal Rule 48(b) due to improper tactics to avoid a March 23, 1988 dismissal of the original indictment and because the State would not have been able to proceed with the March 23, 1988 mandatory trial date.

---

6. The fact that defendant sought and received therapy for stress and anxiety while incarcerated may be just as attributable to the possible consequences of a conviction on the charges which he faces as it is to the fact of pretrial incarceration itself. In any event, his assertions of prejudice produce no talismanic effects vis-a-vis the Sixth Amendment, in my view.

7. His girlfriend, Shirley Ellis, was apparently murdered in November, 1987. However, the death of this possible defense witness occurred

within two months of the defendant's initial arrest. It cannot be said that Shirley Ellis' death was caused by any delay attributable to the State. The State, therefore, did not promote the possibility of an impaired defense with regard to Ellis' death.

8. The same conclusion must follow with regard to Article I, § 7 of the Delaware Constitution. *Fensterer v. State, supra; Hughey v. State*, Del. Supr., 522 A.2d 335 (1987).

Rule 48(b) of the Superior Court Rules of Criminal Procedure provides, in pertinent part, that:

"(b) *Dismissal by Court.* If there is unnecessary delay ... in bringing a defendant to trial, the Court may dismiss the indictment ..."

Rule 48(b) is a codification of the inherent power of a Court to dismiss a case for want of prosecution. It also implements the right of an accused to a speedy trial under the Sixth Amendment. But it is not entirely coextensive with that right. While most dismissals for delay in prosecution are grounded on the Sixth Amendment, Rule 48(b) serves a somewhat broader purpose and there are instances of dismissal involving no denial of constitutional rights. 8A *Moore's Federal Practice* (2d Ed.) p. 48–10.

■ The Court's power under Rule 48(b) is a discretionary one, not governed by established concepts of the Speedy Trial Clause of the Sixth Amendment. Subsumed in the Rule is the need to demonstrate some type of prejudice against the defendant. This showing of prejudice is broader than that normally associated with a Sixth Amendment analysis:

The State contends that the Superior Court erred in dismissing the indictments because the defendants were unable to show any of the prejudicial effects upon the ability to defend ordinarily considered in connection with the constitutional guaranty of speedy trial: death or disappearance of witnesses, loss of evidence, loss of counsel, or other denial of opportunity to prepare for trial. Compare *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We agree with the Court below in its conclusion that other types of prejudice may be sufficient to move the exercise of its discretion under Rule 48(b); the *unexplained commencement of a new prosecution long after a dismissal by the State of the same charge in another court;* the anxieties suffered by a defendant as the result of delay and uncertainty in duplicative prosecutions against

him; the notoriety suffered by a defendant and his family as the result of repeated commencement of prosecutions for the same offense; the expenses, legal and otherwise, attendant upon a subsequent renewal *in another court* of a dismissed prosecution. These and like considerations may constitute sufficient 'prejudices' to justify the exercise of the Court's discretion under Rule 48(b). (Emphasis added.)

*State v. Fischer,* Del.Supr., 285 A.2d 417, 419 (1971).

■ While the defendant points to types of prejudice which resulted in dismissals under Rule 48(b) in other cases, the underlying facts of those cases are distinguishable from the facts of this case and explain why a favorable result from the defense standpoint was reached therein.

Much reliance is placed by the defendant on *Fischer, supra.* Yet there, the result was predictable due to the appearance of untoward prosecutorial manipulation condemned by the trial court:

* * * the delay has been over their [the defendants'] repeated request for trial and at the deliberate choice of the prosecuting authorities *for no valid reason. It is not a case where there are difficulties with the discovery or availability of evidence. Moreover, it is not a case of unavailability of prosecutors, crowded dockets, inadvertence, or even prosecution negligence.* It is a case of conscious prosecution choice which gives the impression, perhaps unwarranted, of unfair manipulation of the criminal process. (Emphasis added.)

*State v. Fischer,* Del.Super., 269 A.2d 244 (1970).

*Fischer* dealt with the unseemly practice of "transferring" cases from a lower court to a higher court after the lower court had taken jurisdiction and become involved with the case. While the Attorney General has the sole power to choose the forum for the prosecution, "that choice should be exercised once—not twice. The price of vacillation is 'the impression, perhaps unwarranted, of unfair manipulation of the criminal process' and undue disruption of court business." *State v. Fischer,* Del.Supr., 285

A.2d at 420. Here, there was no "forum shopping" unilaterally made by the State. The reason for the entry of the *nolle prosequi* was valid—the unavailability of the complaining witness due to no fault of the State.

Reliance on the case of *State v. Hoffstein*, Del.Supr., 315 A.2d 594–595 (1974), is also misplaced. There, a Deputy Attorney General entered a *nolle prosequi* on a DUI charge in a Justice of the Peace Court and a month later the defendant was indicted by the Grand Jury on the same charge. Again, the Delaware Supreme Court condemned the practice of transferring cases from a lower court to this Court, especially when no notice of the intention to transfer was given to the defendant. Here, the defendant, ever since the March 22, 1988 *nolle prosequi*, was fully aware that a second indictment would be sought once the complaining witness had materialized. When the victim was located, the State did no more than that which it had openly indicated it would do.

The case *sub judice* also differs from the case of *State v. Glaindez*, Del.Supr., 346 A.2d 156 (1975), where, again, a dismissal under Rule 48(b) was affirmed by the Delaware Supreme Court. In *Glaindez*, the Rule 48(b) dismissal was affirmed based upon the State's failure to secure the attendance of a vital witness. The State had made no attempt to ascertain whether the witness had been served with a subpoena until the day before trial. While the State had control of the situation in *Glaindez*, here it had no control over the disappearance of the complaining witness; it should not now be made to suffer over a situation beyond its reasonable control. When delays are caused by the State due to a situation within its control, there is no abuse of judicial discretion in dismissing

the charges. *See, State v. Budd Metal Company, Inc.*, Del.Supr., 447 A.2d 1186 (1982).

What we have then, is a case in which, due to no fault of its own, the State entered a *nolle prosequi* on the charges contained in an initial indictment, stating its intent at that time to seek a second indictment in the event that the complaining witness' whereabouts became known. Good to its word, the State, when the victim was located, obtained a second indictment and is now ready for trial. The 18½ month delay in this process,[9] contends the defendant, has caused him the types of prejudice referred to in *State v. Fischer, supra*, and, thus, entitles him to a dismissal of the second indictment under Rule 48(b). The Court finds otherwise. Any prejudice encountered by the defendant due to his incarceration and any attending anxiety, stress and concern as a result thereof is no different than that which would normally be expected from one charged with serious offenses.[10]

The State has not, in my view, attempted to manipulate the judicial process. What it did, it had the right to do. And, it did so openly and in good faith. The resulting delay, while rather lengthy, was not unnecessary.[11] Moreover, the delay did not cause such prejudice to the defendant as to warrant the drastic step of dismissal.[12]

### IV.

It follows that the defendant's Motion to Dismiss must be Denied.

It Is So ORDERED.

---

**9.** Twelve months plus several days of which are assessable to the State.

**10.** It is significant that the length of defendant's period of incarceration since his first arrest has been 8½ months and not 18½ months.

**11.** It is noted that the four pending charges against the defendant are all felonies. A prosecution for any felony except murder must be commenced within 5 years after it is committed. 11 *Del.C.*, § 205(b)(1). The recommencement

of this prosecution occurred within 1 year of the alleged incident.

**12.** Overzealous application of the remedy of dismissal would infringe "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error ..." *United States v. Ewell*, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627, 631 (1966); *see* also *Dickey v. Florida, supra*.