Hillsborough
No. 83-455
No. 83-522

*In re* LARRY B.

August 9, 1984

*Kris E. Durmer*, of Nashua, by brief and orally, for Larry B.

*Winer, Pillsbury & Bennett*, of Nashua (*David K. Pinsonneault* on the brief and orally), for the father and stepmother of Larry B.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Eileen Fox* on the brief and orally), for the Town of Mont Vernon.

BROCK, J. On petition of his father, Larry B. was adjudicated a "child in need of services" (CHINS) pursuant to RSA chapter 169-D (Supp. 1983), in the Milford District Court (*Lizotte*, J.) on February 22, 1983. The court ordered the New Hampshire Division of Welfare to place Larry B. at the DeSisto School in Stockbridge, Massachusetts, "pursuant to the provisions of RSA 170-A." Further, the court found the Town of Mont Vernon, in which Larry B. then resided, liable for most expenses incurred as a result of the order, subject to a right of action against Larry B.'s father, stepmother, and natural mother. *See* RSA 169-D:29, I (Supp. 1983).

Larry B.'s father and stepmother exercised their right to a trial *de novo* in the Superior Court (*Pappagianis*, J.). RSA 169-D:20 (Supp. 1983). After a trial at which all the parties stipulated that Larry B. was a CHINS, the court issued an order dated October 3, 1983. This order essentially upheld all of the district court's rulings, but further held that the district court's jurisdiction had terminated on October 1, 1983, Larry B.'s eighteenth birthday.

Larry B. immediately moved for a stay of the order pending his appeal to this court, alleging that he would suffer irreparable harm otherwise. The superior court granted the stay over the town's objection. Larry B., his father and stepmother, and the town have all appealed.

We affirm that part of the court's order holding that the district court could not exercise any jurisdiction over Larry B. pursuant to the CHINS statute after his eighteenth birthday. We reverse that part of the order holding that Larry B.'s placement at the DeSisto School was authorized by statute.

I. *Jurisdiction*

RSA chapter 169-D (Supp. 1983) applies by its terms "to children in need of services as hereinafter defined . . . ." RSA 169-D:1 (Supp. 1983). "Child" is defined as "a person under the age of 18." RSA 169-D:2, I (Supp. 1983). One of the stated purposes of the chapter is

to provide each CHINS "with the treatment, care, guidance, counselling, discipline, supervision, and rehabilitation necessary to assist him in becoming a responsible and productive member of society." RSA 169-D:1, I (Supp. 1983).

Larry B. concedes that he could not have been adjudicated a CHINS after his eighteenth birthday. He argues, however, that when such an adjudication was made before he attained the age of eighteen, the district court must be permitted to enter the dispositional order that is "most appropriate," RSA 169-D:17, I (Supp. 1983), to achieve the stated purposes of the chapter, even if that order calls for him to be provided with services *after* he turns eighteen.

■ It is an obvious fact of life that not everyone becomes "a responsible and productive member of society" at age eighteen, regardless of the amount of treatment, care, or guidance that he or she has received. Whether an individual has actually become responsible and productive is so complex a question that, in CHINS cases, the legislature might reasonably decide to terminate the State's responsibility in that area at some arbitrarily chosen point. *See, e.g.,* RSA 169-B:4 (Supp. 1983) (terminating jurisdiction over delinquent children). Our reading of the statute indicates that the legislature intended to terminate jurisdiction when a CHINS reaches the age of eighteen.

■ The most persuasive evidence of that intent is the statutory command that "[o]nce a child in need of services reaches 18 years of age, all court and police records shall be destroyed." RSA 169-D:25 (Supp. 1983). Since this would include any record of the court's dispositional order, that order could have no enforceable effect after the child's eighteenth birthday. Nothing in RSA chapter 169-D (Supp. 1983) provides for the court's retention of jurisdiction over a CHINS after he or she turns eighteen.

By contrast, RSA chapter 169-C (Supp. 1983), enacted as part of the same bill with chapter 169-D (Laws 1979, 361:2), contains a provision expressly permitting the court to retain jurisdiction over an abused or neglected child "until such child completes school or until his twenty-first birthday, whichever occurs first," if the child is attending school and consents to the court's continuing jurisdiction. RSA 169-C:4, II (Supp. 1983).

Similarly, RSA chapter 169-B (Supp. 1983), which deals with delinquent children and was enacted together with chapters 169-C and 169-D, provides for limited jurisdiction over persons between eighteen and nineteen years of age. RSA 169-B:4 (Supp. 1983). Jurisdiction terminates when a delinquent turns nineteen, at which

time "all court and individual institutional records . . . shall be sealed and placed in an inactive file." RSA 169-B:35 (Supp. 1983).

In view of the close relationship of the three chapters, *see In re Cindy G.*, 124 N.H. 51, 56–58, 466 A.2d 943, 945–47 (1983), we have no doubt that any similar legislative intent to authorize continuing jurisdiction over children in need of services would have been expressly set out in the statute, and would have entailed a modification of the requirement that all records be destroyed when a CHINS turns eighteen. Accordingly, we find that no such intent existed, and hold that all jurisdiction of the district court over Larry B. ceased on October 1, 1983.

II. *Placement*

The CHINS statute, after listing several possible dispositions that the district court may order, including various types of placements, provides as follows:

> "Any child placed under this section with someone other than a relative shall be placed in a facility licensed pursuant to RSA 170-E. If a child is placed out of state, the provisions of RSA 170-A shall be followed."

RSA 169-D:17, II (Supp. 1983).

RSA chapter 170-A, the Interstate Compact on the Placement of Children, sets out various procedural steps to be followed before an interstate placement may be made. *See, e.g.*, RSA 170-A:1, Article III. These steps were not followed in the present case, because the superior court found that the DeSisto School was an "institution primarily educational in character," and was thus excluded from the definition of "placement" in the Compact. RSA 170-A:1, Article II(d).

The court failed, however, to recognize fully the consequences of its finding. RSA 169-D:17, II (Supp. 1983), quoted above, plainly reflects a legislative intent that no institutional placement be authorized under the CHINS statute unless the institution in question is subject to either the licensing provisions of RSA chapter 170-E or the procedural requirements of the Interstate Compact.

Neither of these sets of safeguards could apply to the DeSisto School, due to its Massachusetts location and its character as a primarily educational institution. Moreover, it appears that the school could not have been licensed under RSA chapter 170-E if it had been located in New Hampshire, because it failed to meet the statutory requirements for licensing. *See* RSA 170-E:1, :2, *especially* RSA 170-E:1, XII(d). To hold that Larry B.'s placement there was

proper would be to defeat both the specific intent of RSA 169-D:17, II (Supp. 1983) and one of the principal goals of the juvenile statutes: to create procedural safeguards sufficient to protect individual rights against the vicissitudes of unlimited discretion. *See In re Russell C.*, 120 N.H. 260, 267, 414 A.2d 934, 938 (1980).

We will not construe the statute to produce such an illogical result. *See State v. Kay*, 115 N.H. 696, 698–99, 350 A.2d 336, 338 (1975). Accordingly, we hold that Larry B.'s placement at the DeSisto School was not authorized, and no liability for expenses associated with that placement could arise, under the CHINS statute.

In view of our holding that neither the town nor Larry B.'s father or stepmother is liable for his expenses at the DeSisto School, we need not address any of their other arguments. We also decline to address the question of where to place ultimate liability for the costs of the DeSisto placement, since that question was not fully litigated at trial and is therefore beyond the scope of this appeal.

*Affirmed in part;*
*reversed in part.*

All concurred.