Merrimack
No. 89-346

THE STATE OF NEW HAMPSHIRE

v.

RICKY C. ADAMS, SR.

January 28, 1991

*John P. Arnold*, attorney general (*Diane M. Nicolosi*, assistant attorney general, on the brief and orally), for the State.

*Bonafide & Bradley*, of Tilton (*Charles H. Bradley, III*, on the brief and orally), for the defendant.

BATCHELDER, J. The defendant was found guilty of one count of attempted aggravated felonious sexual assault after a jury trial in Superior Court (*Manias*, J.) and brings this appeal claiming the following errors:

1. Untimely indictment of the crimes alleging the attempt.

2. Speedy trial and due process violations.

3. Due process violations in failure of the trial court to order a video tape discovery deposition of the victim.

4. Due process violations in the trial court's quashing a subpoena of a prosecuting attorney, which was calculated to inquire as to the reasons for a *nolle prosequi* of the original indictments.

5. The trial court's denial of a motion to set aside the verdict based upon a sufficiency of the evidence claim.

For the reasons that follow, we affirm.

The first two assignments of error may best be evaluated and considered against the chronology of events which led to the defendant's guilty verdict rendered on March 19, 1989.

The defendant was originally indicted for aggravated felonious sexual assault, and was subsequently indicted for the crime of attempt (to commit the offense originally charged) when the State discovered at a late date in the proceedings that it lacked the corroborating physical proof it deemed necessary to sustain the original charge. The distinction was whether the element of penetration was present. The facts giving rise to the prosecution took place between July 19, 1982, and September 8, 1982, when the eleven-year-old victim was assaulted by the defendant. The conduct was not reported by the victim until 1986. The prosecution commenced on November 21, 1986, when the defendant, without prior arrest, was indicted on two counts of aggravated felonious sexual assault involving penile and digital penetration.

The first trial date was set for March 23, 1987. Because the court ordered a pretrial conference and appointed a guardian ad litem for the victim, the trial was rescheduled for April, 1987. The April date was continued by agreement of the defendant, who waived his speedy trial rights. The defendant moved in June, 1987 to continue, waiving his speedy trial rights, and did so again in October. It was at this point that the State determined, as a result of a medical examination of the victim, that physical proof of penetration was lacking; and on February 8, 1988, the State concluded the prosecution by en-

tering a *nolle prosequi* as to each indictment. The defendant was subsequently reindicted on February 19, 1988, on one count of attempted aggravated felonious sexual assault. A contemporaneous information charging the defendant with the misdemeanor of simple sexual assault was filed as well. On March 31, 1988, the court set July 18th as the trial date for the new charges, and on the same date, granted a continuance to the defendant wherein he waived his speedy trial rights. Again, on October 18, 1988, the defendant agreed to a further continuance and waived his speedy trial rights. On December 6, 1988, the case finally came to trial, at which time the State, after jury selection, filed motions *in limine* which warranted a further continuance to March 7, 1989. The court held this continuance against the State. On March 14, 1989, the defendant was found guilty.

We turn now to the defendant's claim that the rule set forth in *State v. Hastings*, 120 N.H. 454, 455–56, 417 A.2d 7, 8 (1980) was violated in this case, in that the subsequent indictment caused him surprise and prejudiced his defense.

■■ The *Hastings* rule provides that the State must obtain an indictment against an individual within sixty days of the date of his arrest, or else demonstrate that any delay beyond sixty days was not unreasonable. *Id.* The purpose of the rule is to lessen the consequences of arrest, such as interference with the individual's liberty, disruption of his employment and the anxiety it may cause him and his family and friends, by requiring the State to submit its case against him to a grand jury within a relatively short period of time after he has been arrested. *See State v. Brown*, 125 N.H. 346, 348, 480 A.2d 901, 903 (1984). If the grand jury does not return an indictment against the individual, then he is no longer under arrest or subject to detention. R. MCNAMARA, 1 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 450, at 308 (1980) (hereinafter R. MCNAMARA). Prior to our adoption of the rule in *Hastings*, however, an individual who had been arrested and bound over to the grand jury on a felony charge could be detained for a considerable period of time, because in some counties the grand jury traditionally sat only two or three times a year. R. MCNAMARA § 477, at 168 (Supp. 1989). The record fails to reveal that the defendant was ever arrested or bound over to a grand jury sitting for purposes of indictment. In this case, it appears that he was directly or secretly indicted and a *Hastings* claim is misplaced. *See State v. Sampson*, 125 N.H. 544, 546, 484 A.2d 1104, 1106 (1984) (stating that the *Hastings* rule attaches only at the time of an individual's arrest).

■ Next, the defendant challenges the delay between the original indictments in November, 1986 and his trial in March, 1989, claiming violations of his speedy trial and due process rights under both the State and Federal Constitutions. In ruling upon the defendant's speedy trial claim, the threshold inquiry is the determination of the actual time to be considered in assessing the period of delay. *See State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988). The fact cannot be disputed that at the outset we are dealing with a delay of twenty-eight months. Close scrutiny, however, places a large portion of the delay at the doorstep of the defendant. In addition, it should be pointed out that during this delay the defendant never asserted his right to a speedy trial.

■■ Five months passed between the first indictments and the first trial date, four months between the date the defendant was reindicted and the July, 1988 trial date, and three months between the December, 1988 trial date and the March, 1989 trial, a total of twelve months of delay that was neither requested nor acquiesced in by the defendant. In *State v. Colbath*, 130 N.H. at 319, 540 A.2d at 1213 (1988), we stated that in a felony case, we will assume a pretrial delay of nine months or more to be presumptively prejudicial. We have in the past held the view that when the prosecution enters a *nolle prosequi* in good faith and then reindicts, the relevant period of time to be considered for purposes of speedy trial analysis begins to run from the time of the second indictment and does not include the time the first indictment was pending. *State v. Quinlan*, 122 N.H. 51, 53, 440 A.2d 13, 14 (1982). Our holding in *Quinlan* alone would end the analysis in this case at this point, because the delay would relate only to the February 19, 1988 indictment, assuming the State acted in good faith in entering the *nolle prosequi* as to the first set of indictments. Such delay would be no more than the three months between the December continuance and the trial in March, and the four months between the March arraignment and the July trial date, a total of seven months. However, our view must now be tempered by the reasoning and holding of the Court of Appeals for the First Circuit that the relevant period of delay does in fact include the time the first indictments were pending, because "otherwise, the government would be able to nullify a defendant's speedy trial rights by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution." *United States v. Colombo*, 852 F.2d 19, 23–24 (1st Cir. 1988). The various circuits seem not to be in accord in this interpretation, but until such time as the United

States Supreme Court considers the issue or until the First Circuit reconsiders it, we will follow the reasoning of *Colombo*.

■■ The part I, article 14 and sixth amendment speedy trial claims, after the application of *Colombo*, must be viewed against a presumptively prejudicial delay (twelve months). The balancing factors of *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972), come into play in such considerations. *State v. Cole*, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978) (adopting the *Barker* analysis for speedy trial claims raised under part I, article 14). These factors are: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of his speedy trial rights; and (4) prejudice to the defendant. Because we find that the defendant suffered no prejudice as a result of the delay, and because the defendant did not assert his speedy trial rights, he comes up short on the last two *Barker* criteria. Accordingly, we conclude that the defendant was not denied his right to a speedy trial under the State or Federal Constitutions.

■ The due process claims which the defendant attributes to the delay are grounded in the language of part I, article 15 of the State Constitution and the fifth and fourteenth amendments to the Federal Constitution. In the context of cases such as this, the due process clause has a "'limited role to play in protecting against oppressive delay.'" *State v. Varagianis*, 128 N.H. 226, 228, 512 A.2d 1117, 1119 (1986) (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). To establish a due process violation under the Federal Constitution, a defendant must show that the delay resulted in actual prejudice to the conduct of his defense. *United States v. Marion*, 404 U.S. 307, 325–26 (1971). We have since followed the standard in *Marion* in determining whether a delay in prosecution has resulted in a denial of due process. *See Varagianis*, 128 N.H. at 228, 512 A.2d at 1119 (defendant challenging preindictment delay). Once the defendant has shown that actual prejudice resulted from the delay, the trial court must balance this prejudice against the reasonableness of the delay. *Id.*

■ The defendant claims that the delay caused him actual prejudice by exhausting his financial resources. His claim fails because the court appointed counsel to represent him and, in addition, the State, upon order of the court, paid for an expert to testify on his behalf. The defendant's ability to defend against the charges was not compromised or impaired. His further claim that the State, in obtaining a subsequent indictment upon a lesser charge, deprived him of the

defenses available to him on the earlier indictment, *i.e.*, lack of penetration, does not warrant discussion.

The defendant's last three claims of error warrant brief and passing consideration. In the first of these arguments, the defendant maintains that the court's denial of his motion for a video tape deposition of the victim constituted reversible error under *State v. Heath,* 129 N.H. 102, 523 A.2d 82 (1986), because it violated his right to due process and effective assistance of counsel under part I, articles 14 and 15 of the State Constitution and the fifth, sixth and fourteenth amendments to the Federal Constitution.

 In *Heath,* we held that the trial court's denial of a defendant's request for a video tape deposition pursuant to RSA 517:13 does not necessarily violate the standard of due process under the State and Federal Constitutions. *State v. Heath,* 129 N.H. at 108, 523 A.2d at 86–87. Discovery depositions are not always essential to adequate trial preparation, for there may be other sources of information and evidence available to an accused. *Id.* at 109, 523 A.2d at 87. We found that there was no denial of the defendant's right to due process in *Heath,* because the defendant had access to a statement by the minor victim that enabled him to anticipate the victim's testimony and that provided a basis for attacking the victim's testimony in the event he testified. *Id.* We nevertheless recognized that "specific procedural and factual features of a given case may prompt a claim to discovery on due process grounds." *Id.* at 109–10, 523 A.2d at 87.

 The defendant in the present case, like the defendant in *Heath,* had access to a statement by the victim. Although he argues that, given the facts of the present case, he was entitled to a video tape deposition of the victim under the due process clause, he does not allege that he was unable to prepare adequately for trial using the statement alone. "The basic object of the discovery process in criminal proceedings is to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise, thus extending to him fundamental fairness which the adversary system aims to provide." *State v. Kehner,* 776 S.W. 2d 396, 397 (Mo. Ct. App. 1989). We hold that the court did not err in denying the defendant's motion for a video tape deposition and that there was no violation of his State or federal constitutional right to due process and effective assistance of counsel, because the defendant has failed to show that he was unable to prepare adequately for trial without video tape deposition discovery.

The defendant also submits that the court erred in granting the State's motion to quash his subpoena of Assistant County Attorney Susan Alfin, thereby depriving him of the right to present all favorable evidence, the right to confront his accusers, the right to due process and the right to effective assistance of counsel under part I, article 15 of the State Constitution and the fifth and sixth amendments to the Federal Constitution. The defendant offered to prove that Alfin would testify that the reason a *nolle prosequi* was entered as to the first set of indictments was the lack of physical evidence of penetration.

■ Part I, article 15 provides that "[e]very subject shall have a right to produce all proofs that may be favorable to himself." The United States Supreme Court has interpreted similar language contained in the sixth amendment as entitling a defendant only to testimony that is both material and favorable to his defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (construing sixth amendment guarantee of "compulsory process for obtaining witnesses in his favor"). In order to establish a violation of the compulsory process clause of the sixth amendment and the due process clause of the fifth amendment, a defendant must show that the testimony he was precluded from introducing would have been material and favorable to his defense in ways not merely cumulative of other evidence. *See id.* at 873. We hold that an individual must also meet this standard for purposes of demonstrating a violation of his corresponding rights under part I, article 15.

■ The mere fact that Alfin's predictable testimony would reveal physical evidence at odds with statements by the victim does not meet this test. The evidence would have been cumulative, and thus, the subpoena of Alfin was properly quashed.

■ Finally, the defendant asserts that the court erred in denying his motion to set aside the verdict, on the ground that the testimony of the victim that there was digital and possibly penile penetration was inconsistent with the lack of physical evidence of penetration. In resolving a sufficiency of the evidence question, "[w]e must view the evidence in the light most favorable to the State, and uphold the verdict of the fact-finder unless no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *State v. Wright*, 128 N.H. 122, 123, 509 A.2d 1253, 1254 (1986).

■ Whether or not the defendant actually penetrated the victim is irrelevant in the present case, because the defendant was tried for

*attempted* aggravated felonious sexual assault. The jury need only have found that the defendant's act(s) or failure to act constituted a substantial step toward the commission of the crime of aggravated felonious sexual assault. *See* RSA 629:1, I. Viewing the evidence most favorably to the State, we are satisfied that it is sufficient to support a guilty verdict.

*Affirmed.*

HORTON, J., did not sit; the others concurred.