NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court - Concord Family Division
No. 2012-920


IN RE TREVOR G.

Argued: January 16, 2014
Opinion Issued: February 7, 2014


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the juvenile.

CONBOY, J. In this interlocutory appeal from an order of the 6th Circuit Court – Concord Family Division (Tenney, J.), the juvenile, Trevor G., challenges the court's denial of his motion to dismiss the delinquency petition against him. See Sup. Ct. R. 8. We reverse.

We take the facts as presented in the interlocutory appeal statement and its appendix. See State v. Fournier, 158 N.H. 441, 443 (2009). On July 31, 2012, the juvenile was arraigned on a delinquency petition alleging that he had endangered the welfare of a minor. An adjudicatory hearing was scheduled for August 23, 2012. At the August 23 hearing, the juvenile moved to dismiss the petition because none of the State's witnesses was present and, as a result, the State could not go forward with its case. The State acknowledged that it could not go forward with its case and did not object to dismissal of the petition. The

State requested leave to file a motion for reconsideration in the event that it later learned that there had been a good reason, such as an emergency, that had prevented the witnesses from being present.  The trial court granted the juvenile's motion and dismissed the case for lack of prosecution.  The State did not move for reconsideration.

On October 1, 2012, the State refiled the petition.  The juvenile was arraigned on October 10 and an adjudicatory hearing was scheduled for November 7.  On October 18, the juvenile moved to dismiss the refiled petition, arguing that the adjudicatory hearing would not be held within the time limit prescribed in RSA 169-B:14, II, which requires that an adjudicatory hearing be held within thirty days of arraignment for juveniles who are not detained.  See RSA 169-B:14, II (2002).  The juvenile argued that the deadline for holding the adjudicatory hearing had to be measured from the date of his initial arraignment on July 31 and, therefore, the scheduled November 7 adjudicatory hearing would be untimely.

The court held a hearing on the juvenile's motion on October 30.  At that hearing, the State disclosed that the State's witnesses were not present at the originally scheduled adjudicatory hearing because, although subpoenas had been issued, they were never served.

On November 2, the court issued an order denying the juvenile's motion, finding that this case is indistinguishable from In re Kirsten P., 158 N.H. 158 (2008).  The court determined that, "[i]n both cases, the [juvenile] initiated the dismissal.  Consequently, the State is not barred from re-filing."  The juvenile's motion for reconsideration was denied.

The trial court granted the request for an interlocutory appeal and transferred the following question to this court:  "Did the trial court err when it determined that the time limits set forth in RSA 169-B:14, II were not violated when the State re-filed a delinquency petition previously dismissed for lack of prosecution because the dismissal was initiated by the juvenile?"

We answer the question in the affirmative and reverse the trial court's order denying the juvenile's motion to dismiss.

Because the transferred question involves statutory interpretation, our review is de novo.  See Fournier, 158 N.H. at 445.  In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole.  In re Kirsten P., 158 N.H. at 160.  When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.

2

RSA chapter 169-B is part of a comprehensive juvenile justice system that has as its primary concern the welfare of the child. Id.; see also In re Eric C., 124 N.H. 222, 224 (1983). It "guarantees children their constitutional rights, and encourages the use of rehabilitative and treatment resources whenever possible." In re Kirsten P., 158 N.H. at 160 (quotation omitted); see also In re Russell C., 120 N.H. 260, 266 (1980). "One of the principal goals of the juvenile statutes is to create procedural safeguards sufficient to protect individual rights against the vicissitudes of unlimited discretion." In re Kirsten P., 158 N.H. at 160 (quotation and brackets omitted).

RSA 169-B:14, II serves to further that goal by prescribing that "adjudicatory hearing[s] [in juvenile delinquency proceedings] shall be held . . . within 30 days of arraignment" when a juvenile, as in this case, has not been detained. The statute provides for "[a]n extension of these time limits . . . for an additional period not to exceed 14 calendar days," "upon a showing of good cause." RSA 169-B:14, II.

Recognizing the impact that delays in a court proceeding may have on a juvenile, we have interpreted the statutory time limits as "a legislative pronouncement of a child's right to the expeditious resolution of his alleged delinquency," which reflects the legislative concern for procedural due process. In re Eric C., 124 N.H. at 224 (quotation omitted); see In re Juvenile 2007-150, 156 N.H. 800, 802 (2008) ("[T]he mandatory time limit set forth in RSA 169-B:14 is analogous to an adult offender's right to a speedy trial."). As we have often stated, the time limits prescribed in RSA chapter 169-B for the holding of adjudicatory hearings are mandatory. See, e.g., In re Eric C., 124 N.H. at 223-24. These time limits "effectuate a substantive right requiring the court to forfeit jurisdiction if not complied with, unless such noncompliance is the result of a delay caused or requested by the juvenile, in which case he will be deemed to have waived the time limits." In re Russell C., 120 N.H. at 268 (emphasis added). As such, a "district court must dismiss a juvenile petition when, through no fault of the juvenile, an adjudicatory hearing is not held within the statutory time limits." In re Eric C., 124 N.H. at 223-24 (emphasis added); see also State v. Justus, 140 N.H. 413, 416 (1995) (stating that, under RSA chapter 169-B, "[i]f the district court fails to hold an adjudicatory hearing within the time limits established by the statute, the court loses jurisdiction, unless such noncompliance is the result of delay caused or requested by the juvenile" (quotation omitted)).

Here, the juvenile maintains that, although he moved to dismiss, he neither caused nor invited the delay. Rather, he argues that the State caused the delay "by failing to present evidence and by failing to seek to reschedule the hearing before the expiration of the deadline." As a result, he contends that the trial court erred in concluding that the State could refile the petition "after

3

a dismissal for failure to present evidence within the adjudicatory hearing deadline" because allowing the State to do so would run counter to the language and intent of RSA 169-B:14, II.

Relying upon In re Kirsten P., the State argues, and the trial court agreed, that because the original delinquency petition was dismissed upon the juvenile's motion, the thirty-day time limit for an adjudicatory hearing began to run again at the arraignment on the refiled petition. The State contends that "the dismissal and re-filing of the petition in this case were not of a character that threatens the policy behind the time limits in RSA 169-B:14, II." We disagree.

We begin by reviewing In re Kirsten P. In that case, the juvenile moved to dismiss the original petition sixteen days after arraignment. In re Kirsten P., 158 N.H. at 159. She sought dismissal based upon improper service to her mother and legal custodian despite the fact that it appeared that both her mother and legal custodian had actual notice of the proceedings, since they both were apparently present at the arraignment, and despite the fact that her mother waived timely service. Id. The State objected to dismissal of the petition. Id. at 162. The juvenile did not allege bad faith on the part of the State; rather, the record reflected that the State believed that the mother's waiver of service was sufficient to satisfy the notice requirements set forth in the statute. Id. There was nothing to suggest that, absent the juvenile's motion, the adjudicatory hearing on the original petition would not have been held in a timely manner. Id. at 159-63.

On appeal, we concluded that it was not improper, under the circumstances presented in that case, to allow the State to refile the petition and restart the clock upon the juvenile's arraignment on the second petition. Id. at 162-63. Recognizing that the juvenile's right to the expeditious resolution of alleged delinquency is analogous to an adult offender's right to a speedy trial, id. at 160, we distinguished the speedy trial principle set forth in State v. Adams, 133 N.H. 818 (1991). When the government voluntarily dismisses charges and subsequently reindicts, the time during the pendency of the first indictment must be included in the speedy trial calculation. In re Kirsten P, 158 N.H. at 161. We noted that the reasoning behind this principle was to prevent the government from "nullifying a defendant's speedy trial rights by the simple expedient of dismissing and reindicting." Id. (quotation and brackets omitted). However, we found that this rationale did not apply because the delay in holding the adjudicatory hearing was due to the motion filed by the juvenile, the effect of which prevented the hearing from occurring. See id. at 159, 161-62. Thus, our decision in that case implicated the exception that has long been part of our interpretation of RSA 169-B:14, II: the court is not required to forfeit jurisdiction if noncompliance with the time limit "is the result of a delay caused or requested by the juvenile" because, in such a case, the

4

juvenile "will be deemed to have waived the time limits." In re Russell C., 120 N.H. at 268.

To be sure, In re Kirsten P. contains language that appears to support the State's position. We stated that "consistent with [the] speedy trial principles . . . [we have adopted in criminal cases], . . . the statutory clock set forth in RSA 169-B:14, II restarts when the original petition is dismissed upon a successful motion by the juvenile." In re Kirsten P., 158 N.H. at 162. This language cannot be read, however, as allowing the State to refile a petition and restart the clock whenever the original petition is dismissed upon the juvenile's motion. Rather, consistent with our long-standing interpretation of RSA 169-B:14, II, as well as our reasoning in adult offender speedy trial cases, the result must depend upon the reason for the dismissal of the original petition – that is, whether the juvenile caused the delay and impliedly waived the statutory time limits. See In re Russell C., 120 N.H. at 268; cf. State v. Bernaby, 139 N.H. 420, 423 (1995) (concluding that trial court did not deny defendant his right to a speedy trial where delay was due, in part, to defendant's waiver of right and request for continuances because a "defendant cannot take advantage of a delay he has caused").

In this case, the juvenile moved to dismiss at the original adjudicatory hearing because none of the State's witnesses was present and, therefore, the State could not go forward with the hearing. The State acknowledged that it could not go forward with the hearing and did not object to dismissal of the petition. The State did not request a continuance or that it be given a fourteen day extension under RSA 169-B:14, II. Cf. In re Juvenile 2007-150, 156 N.H. at 802 (holding that trial court did not err in denying juvenile's motion to dismiss for failing to complete adjudicatory hearing within statutory time limit where adjudicatory hearing began within thirty days of arraignment but prosecutor requested a continuance when one of his subpoenaed witnesses did not appear). Rather, the only relief the State requested was leave to move for reconsideration in the event that it later learned that good cause had prevented its witnesses from appearing at the hearing. The State did not move for reconsideration. Thus, although the original petition was dismissed upon the juvenile's motion, the juvenile neither waived his right to a timely adjudicatory hearing nor took any action that could properly be characterized as causing the hearing to be delayed beyond the statutory time limit. Indeed, it was "through no fault of the juvenile" that the initial adjudicatory hearing was not held within the time limit. See In re Eric C., 124 N.H. at 224.

Unlike In re Kirsten P., to allow the statutory time limits set forth in RSA 169-B:14, II to restart under the circumstances of this case would confer "unlimited discretion" upon the State, thereby undermining the due process protections at the core of RSA 169-B:14, II. See In re Kirsten P., 158 N.H. at 163. The State argues that dismissal and refiling of the petition in this case

does not serve to threaten the policy behind the statutory time limits because "dismissal was precipitated by the fact that the State's witnesses were missing." These mandatory time limits are rooted in the juvenile's right to due process, In re Eric C., 124 N.H. at 225, and we have said that the district court must dismiss a juvenile petition when, through no fault of the juvenile, an adjudicatory hearing is not held within the statutory time limits, id. at 223-24. Here, the original adjudicatory hearing was not held within the mandatory thirty-day time limit, the delay was not attributable to the juvenile, and the State did not request an extension of the time limit pursuant to the statute. Accordingly, the trial court "forfeited jurisdiction" and should have dismissed the second petition. See id. at 225.

Reversed.

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.