NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

5th Circuit Court-Claremont Family Division
No. 2018-0601

PETITION OF THE STATE OF NEW HAMPSHIRE

Argued: May 16, 2019
Opinion Issued: August 6, 2019

Gordon J. MacDonald, attorney general (Daniel E. Will, solicitor general, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the juvenile.

Malloy & Sullivan Lawyers Professional Corporation, of Hingham, Massachusetts (Kathleen C. Sullivan on the brief), for Union Leader Corporation, as amicus curiae.

HANTZ MARCONI, J. The State filed a petition for original jurisdiction seeking review of an order of the Circuit Court (Yazinski, J.) denying a request by the Office of the Attorney General (AGO) to release records underlying its investigation into an incident involving minors. See Sup. Ct. R. 11. We affirm the court's ruling that the records are confidential under RSA 169-B:35 (Supp. 2018).

According to the AGO, in 2017, an incident involving several minors occurred in Claremont. The AGO, the United States Attorney's Office, the Federal Bureau of Investigation, and the Claremont Police Department jointly investigated the incident. Subsequently, the Sullivan County Attorney filed delinquency petitions in the circuit court against one of the juveniles.

The AGO, thereafter, sought court authorization "to disclose the details of its investigation, its conclusions of fact and law, and the nature of the Claremont Police Department's delinquency charges and the disposition in [the] delinquency matter." As grounds for the request, the AGO cited "the intense public interest in and scrutiny of its investigation." The AGO asserted that the evidence obtained during the investigation was not confidential under RSA 169-B:35 but, even if it were, "significant policy considerations" allowed disclosure as long as the juvenile's identity was protected.

Following a hearing, the trial court rejected the AGO's argument that RSA chapter 169-B does not apply to the AGO's investigatory records. The court stated that "RSA 169-B:35 provides that all case records relative to delinquencies are confidential. Publication of information concerning a juvenile case is strictly prohibited with few legislatively enacted exceptions. None of those exceptions apply in this case." The court further stated that

> the courts, police departments, and prosecutors throughout the state have always considered the investigative files of agencies involved with juvenile delinquencies to be subject to the confidentiality provisions of RSA 169-B. To find otherwise would render the confidentiality requirements of the statute meaningless. Little would be gained from closing court records to the public while allowing prosecutorial agencies to discuss and disclose their findings and records with the press or to publicly release those records.

The court found, however, that "a limited release of information would, in fact, assist" in the juvenile's rehabilitation and, accordingly, it granted the AGO's request to "release information contained in [the AGO's] investigative reports as well as its investigative conclusion." The court also authorized the AGO "to acknowledge that a delinquency case has been opened . . . and a Dispositional Order adopted" and that the court "will continue to exercise jurisdiction over this juvenile as [the juvenile] complies with Dispositional Orders and engages in . . . rehabilitative services." The court ordered that "[p]rior to the release of any information or media statements, the Attorney General's Office shall provide counsel for the juvenile with a copy of the documents it intends to release" as well as providing a copy to the court.

Accordingly, the AGO submitted to the trial court a 25-page draft report that protected the confidentiality of the victim and the witnesses and

documented: (1) the scope of its investigation; (2) the facts it found during its investigation; and (3) its conclusions based on those facts. Following a hearing, the court authorized the AGO to release the report as written. The AGO, thereafter, renewed its request to release its underlying investigative records — approximately 400 pages consisting of, among other things, transcripts of interviews conducted by the child advocacy center, the AGO, and the Claremont Police Department; Claremont Police Department documents; and medical records. The trial court denied the motion, and this appeal followed.

On appeal, the State argues that the trial court erred in denying the AGO's request to release its underlying investigative materials because: (1) they do not constitute "case" or "court" records within the meaning of RSA 169-B:35; and (2) even if the confidentiality provisions of RSA 169-B:35 apply to them, the court interpreted the statute "too broadly" in denying the AGO's request to release redacted records that contain "factual information about a matter of public import."

Resolving these issues requires us to interpret the relevant statutory provisions. We review the trial court's statutory interpretation de novo. In re Kirsten P., 158 N.H. 158, 160 (2008). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We consider the words and phrases of the statute within the context of the statute as a whole. In re D.B., 164 N.H. 46, 48 (2012).

Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. In re Ryan D., 146 N.H. 644, 646 (2001). When interpreting several statutory provisions that involve the same subject matter, the provisions must be construed together so that they lead to a logical result reflective of the legislative purpose of the statutes. Id.

RSA chapter 169-B governs court proceedings involving delinquent juveniles. The chapter is to be "liberally interpreted, construed and administered to effectuate" the stated purposes and policies, including encouraging "the wholesome moral, mental, emotional, and physical development of each minor coming within the provisions of [the] chapter, by providing the protection, care, treatment, counselling, supervision, and rehabilitative resources which such minor needs." RSA 169-B:1, I (2014). In enacting RSA chapter 169-B, "[t]he primary purpose of the Legislature was to shield children under eighteen from the environment surrounding adult

offenders and inherent in the ordinary criminal processes." State v. Smith, 124 N.H. 509, 512-13 (1984) (quotation omitted). "As an incident of the accomplishment of this purpose, proceedings involving children under eighteen are so conducted as to prevent attachment of the stigma of a criminal by reason of conduct resulting from immature judgment." Id. at 513 (quotation omitted).

Recognizing the inherent differences between children and adults, the legislature "has provided for special treatment of juveniles under the juvenile justice statute." State v. Benoit, 126 N.H. 6, 12 (1985). The legislative purpose sought to be accomplished by the juvenile laws is "not penal, but protective. It is not that the child shall be punished for breach of a law or regulation, but that he shall have a better chance to become a worthy citizen." In re Pelham, 104 N.H. 276, 276 (1962) (quotation omitted).

Thus, "[a]ll juvenile cases shall be heard separately from the trial of criminal cases, and such hearing shall be held wherever possible in rooms not used for such trials," and "[o]nly such persons as the parties, their witnesses, their counsel, the victim, a victim witness advocate or other person chosen by the victim, the county attorney, the attorney general and the representatives of the agencies present to perform their official duties shall be admitted." RSA 169-B:34, I(a) (2014); see also RSA 169-B:19, III-c(a), (e) (2014) (providing that the confidentiality provisions of the statute apply to a de novo jury trial). RSA chapter 169-B restricts the information regarding the juvenile that "shall be disclosed to the victim, and may be disclosed to the victim's immediate family" by a law enforcement agency or the prosecution. RSA 169-B:34, III (2014). It is a misdemeanor for "a victim or any member of the victim's immediate family to disclose any confidential information to any person not authorized or entitled to access such confidential information." RSA 169-B:34, IV (2014).

In addition, RSA chapter 169-B restricts access to juvenile "case" and "court" records. RSA 169-B:35, I, II. Upon the filing of any petition alleging the delinquency of a minor, the court must serve the department of health and human services with a copy of the petition, and the department must be a party to, and receive notice of, all proceedings. See RSA 169-B:6-a, :6, I (2014). With the exception of specific persons or entities identified in the statute or order of the court, the "case records" of the department created in connection with cases brought under RSA chapter 169-B are confidential. RSA 170-G:8-a (Supp. 2018). With limited statutory exceptions, it is a misdemeanor for "any person entrusted with information from case records to disclose such records or information contained in them" or for "any person who receives case records or the information contained in them from a parent or a child to disclose such records or information." RSA 170-G:8-a, V.

Pursuant to RSA 169-B:35, I, "case" records refer to the records described in RSA 170-G:8-a, relative to delinquency. RSA 170-G:8-a "case

records" are records "created by the department of health and human services." It is undisputed that the AGO's underlying investigative materials were not created by the department of health and human services and, therefore, do not constitute "case records" as defined in the statute.

With the exception of cases where a minor is charged with a violent crime, RSA 169-B:36, II (2014), "court records" of juvenile delinquency proceedings "shall be kept in books and files separate from all other court records," and such records "shall be withheld from public inspection" unless they fall within limited exceptions set forth in the statute. RSA 169-B:35, II. "Additional access to court records may be granted by court order or upon the written consent of the minor." Id. "Once a delinquent reaches 21 years of age, all court records and individual institutional records, including police records, shall be closed and placed in an inactive file." Id. However, "[p]olice officers and prosecutors involved in the investigation and prosecution of criminal acts shall be authorized to access police records concerning juvenile delinquency . . . and to utilize for the purposes of investigation and prosecution of criminal cases police investigative files on acts of juvenile delinquency." RSA 169-B:35, III(a). In addition, "[p]rosecutors involved in the prosecution of criminal acts shall be authorized to access police records concerning juvenile delinquency or records of adjudications of delinquency," but may not disclose the existence of an adjudication for juvenile delinquency unless disclosure is "constitutionally required or after the court having jurisdiction over the criminal prosecution orders its disclosure." RSA 169-B:35, III(b). With a limited statutory exception, any person who discloses court records "or any part thereof to persons other than those persons entitled to access" under the statute, shall be guilty of a misdemeanor. RSA 169-B:36, I (2014); see RSA 169-B:36, II.

The State argues that, although the statute does not provide a "specific definition" of court records, "[i]nterpreted in the context of the entire statutory provision, the language of RSA 169-B:35, II reveals that the legislature intended to maintain confidentiality only over records in the court files of the actual juvenile proceeding, meaning records concerning the adjudication of juvenile delinquency cases, which is the subject of RSA 169-B." According to the State, "that definition makes sense" because "very rarely would investigations of crimes involving juveniles occur outside of the juvenile delinquency proceedings themselves." Further, the State argues, its investigatory records are not court files because the investigation by the AGO occurred before the juvenile proceedings, and the AGO's records were presented to the court "only to give the family court context for the AGO's motions to release the investigative records." Although the State acknowledges that the AGO's investigative records include Claremont Police Department reports that "arguably" fall within the confidentiality provisions of the statute, it asserts that "[t]he statute allows use of police records for purposes outside of delinquency proceedings, . . . and imposes no confidentiality upon them once released."

5

As set forth above, RSA chapter 169-B establishes special, largely non-public, procedures for juveniles and authorizes broad restrictions on access to juvenile case and court records. The importance the legislature attaches to the confidentiality of juvenile records is reflected in the fact that disclosure of records in violation of RSA chapter 169-B is a crime. Although the chapter does not expressly define what is encompassed within the meaning of court records, we construe the statute liberally to effect its purpose of rehabilitating delinquent minors by shielding them "from the environment surrounding adult offenders and inherent in the ordinary criminal processes." State v. Smith, 124 N.H. at 512-13 (quotation omitted); see RSA 169-B:1 (2014). Thus, it is reasonable to conclude that the legislature intended that investigative records compiled by the AGO concerning a juvenile subject to the provisions of RSA chapter 169-B be confidential. Indeed, as the AGO acknowledged in its motions before the trial court, "the information gathered over the course of the Attorney General's investigation is relevant to . . . and likely will become part of any court records," and "[m]any of the facts obtained during the Attorney General's investigation of the . . . matter—facts which include those in the Claremont Police Department's investigation of the same incident—form the basis for the prosecution of [the juvenile] that is now before" the court.

The State also argues that confidentiality for purposes of RSA 169-B:35 is limited "only to those aspects of the records that might reveal" the juvenile's identity, and that the trial court "took confidentiality beyond its statutory purpose . . . to encroachment upon the public's interest in knowing about facts and events of public import." According to the State, "the legislature has expressed its desire for government transparency in the form of RSA 91-A, which sets forth a simple process through which citizens can obtain all manner of governmental and public records," and that the Right-To-Know Law, along with Part I, Article 8 of the New Hampshire Constitution, evidence "a strong public interest in the release of as much information as possible to the public, including the AGO's investigative records that provide the factual explanation for [its] conclusions." The State acknowledges, nonetheless, that "this is not a Petition pursuant to RSA 91-A."

The State's justification for the release of its investigative records is framed in terms of the public's right to "an accounting of the basis for the AGO's conclusions in a matter involving important social justice issues and the public's skepticism of government's willingness and ability to deal competently with those issues." The State asserts that "[r]elease of the AGO Report but not the records will make the report itself appear non-transparent and undermine public confidence in the AGO's investigation and conclusions." The legislature has, however, determined that confidentiality to juvenile proceedings and records prevails over the right of public access to such information. The AGO's request was made in the context of a juvenile delinquency proceeding brought under RSA chapter 169-B. Accordingly, the circuit court correctly framed the analysis by balancing any release of information with the best interests of the

6

juvenile, determining that "[i]f no information is released to the public, the false narrative that currently exists will continue to be the only information that the public has access to," and because that "false narrative continues to haunt the juvenile in this case," a release of information "may, in fact, help in [the juvenile's] rehabilitation."

We conclude that the trial court did not err in determining that the AGO's investigatory records in this case are subject to the confidentiality provisions contained in RSA chapter 169-B that govern access to proceedings and records involving delinquent juveniles. It is within the trial court's discretion to grant access to such records. See RSA 169-B:35, II. If any party, in light of this opinion, believes specific records should be released, the party may file a motion identifying said records and the reasons why they should be released for the trial court's review.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.