643 A.2d 432

**STATE of Maryland**

v.

**Erik HENSON.**

**No. 99, Sept. Term, 1993.**

Court of Appeals of Maryland.

June 29, 1994.

Ann N. Bosse, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Arthur A. DeLano, Jr., Asst. Public Defender, (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued Before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH Jr., Judge * (retired, specially assigned).

BELL, Judge.

We granted the State's petition for certiorari to resolve whether, when the State, in good faith, dismisses charges pending against a defendant and later indicts that defendant for the same charges, the period between the defendant's arrest on the initial charges and his indictment is included in the speedy trial calculus. The motions judge held that it is

---

* Orth, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

not.[1]  On direct appeal, the Court of Special Appeals, in an unreported opinion, held to the contrary—that the time for speedy trial analysis in this case began to run from the date of the initial arrest.  Consequently, it remanded the case, without affirmance or reversal, for hearing on the merits.  Contrary to the intermediate appellate court's holding, we conclude that, ordinarily, the period during which no prosecution is pending as a result of a good faith dismissal of charges by the State, in this case, from *nolle pros* to indictment, is not considered in the speedy trial analysis.  Where, however, the dismissal was not in good faith, the entire period, counting from the date of arrest or formal charge under the first prosecution, controls.  Because, in this case, there has been no factual determination whether the *nolle pros* was entered in good faith, the trial court will be required, on remand, to make that determination preliminary to addressing the speedy trial merits.

## I.

Erik Henson, the respondent, was indicted, on May 8, 1990, for assault with intent to murder and related charges growing out of a shooting that occurred on May 11, 1989.  After his arrest on February 22, 1992, he filed a motion in the Circuit Court for Prince George's County to dismiss that indictment for lack of speedy trial.  The proffers of counsel made at the hearing on the motion revealed that there had been a previous prosecution, in connection with which the respondent was arrested on May 25, 1989.  That prosecution was terminated on July 26, 1989, when the State dismissed, by *nolle pros,* the charges then pending against the respondent.  Although a summons was mailed to the respondent at his last known

---

1.  Although not before us, the trial judge held, like the motions judge, *inter alia,* that the applicable period for speedy trial analysis begins with the defendant's arraignment on the subsequent indictment and, thus, does not apply to the period between arrest on the original prosecution and the commencement of a subsequent prosecution.  This ruling was made in response to the renewal of the motion to dismiss for lack of speedy trial made by the defendant just prior to the start of trial.

address, shortly after the indictment was filed, it was never served. A bench warrant, which was issued after the respondent failed to appear at the scheduled arraignment on the indictment, was not served until he was arrested on the indictment.

The respondent argued that the trigger for the invocation of his speedy trial right was his arrest on May 25, 1989. Thus, he asserted, counting from that date, the entire period, including that between dismissal of the charges and indictment, had to be considered in determining whether his speedy trial right had been infringed. The State agreed so far as the triggering mechanism is concerned. It disagreed, however, that the respondent's speedy trial right had been violated.[2]

In support of the latter position, "assuming that defendant's speedy trial began to run from the date of his arrest in May of 1989, the State went back and tried to put together everything that happened between the date of the offense, 1989 and the time of the indictment." Reviewing each step of that process, the State sought to justify its actions. It pointed out that, although a subpoena had been issued for him to do so, the victim did not appear before the Grand Jury and, therefore, a body attachment issued for the victim. The State also acknowledged that it had "some problem with [the victim's] story" and that its inability to locate the victim hampered its further investigation of the victim's story. The State also sought to demonstrate that it had made reasonable efforts to contact the respondent once he had been indicted. Thus, the State noted that it: sent a summons to the respondent's last known address shortly after the indictment was filed; requested and received a bench warrant when the respondent did not appear for arraignment; and checked the jails and the Department of Parole & Probation for the respondent. The State then concluded:

---

2. When the State indicated to the court that its research revealed that the respondent was correct in stating that the trigger for the speedy trial right was the date of the respondent's initial arrest, the court asked "What is your other argument?," thus inviting the State to provide this alternative argument.

There has been no assertion that this defendant has been prejudiced in any way. There is no indication that he is having witness problems as a result of this. There is no assertion that he had any difficulty or concerns, or that he was injured in any way.

I don't think that the defense has established that there was a violation of his speedy trial rights.

Disagreeing with both the respondent and the State as to "when you start counting," the motions court took the matter under advisement. In its subsequently filed order, it concluded:

Defendant moved for a speedy trial on March 20, 1992, and filed a motion to dismiss for lack of speedy trial on May 26, 1992. When ruling upon a motion to dismiss for lack of speedy trial, the court looks to the date the defendant was arraigned, not the date of the offense. Defendant was rearraigned on March 9, 1992, and has been subjected to delay of only 110 days as of the date of this order. Thus, the defendant has not been prejudiced in any way.

The Court of Special Appeals reversed.[3] It said:

The speedy trial clock started running on May 25, 1989, the date appellant was arrested. The State's decision to dismiss the charges while they tried to track down the victim in this case did not stop the clock from running. The decision was chargeable to the State and was not within

---

**3.** In the Court of Special Appeals, the State continued to concede that the speedy trial clock began to run when a defendant is either arrested or charged, whichever is earliest. It argued, for the first time, however, that a different analysis may be appropriate when the State dismisses the charges and later reinstitutes the same charges. Petitioner's Brief in the Court of Special Appeals at 9–11. In addition, the State maintained that failure to consider the period between the respondent's second arrest and his indictment was consistent with the statement in *United States v. Loud Hawk*, 474 U.S. 302, 312, 106 S.Ct. 648, 654, 88 L.Ed.2d 640, 652 (1986) that "[w]hen defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." Finally, the State continued to maintain that, even if the applicable period were to run from the respondent's initial arrest, he had not been denied his right to a speedy trial.

appellant's control. The decision to indict appellant on the same charges that had been previously dismissed was also chargeable to the State. More importantly, appellant was indicted and later tried on those same previously dismissed charges. Accordingly, we find that the delay in the case *sub judice* was presumptively prejudicial and should have triggered the four-factor analysis enunciated in *Barker, supra.* We shall therefore remand this case, without affirmance or reversal, to the circuit court for a hearing on the merits of the speedy trial claim.

We do not believe, as opined by the trial court, that the motions court applied the four-part *Barker* test and found appellant's claim lacking. The motions court decision was clearly rooted in its belief that the length of delay had been only 110 days, and not in any belief that the *Barker* balancing test had been satisfied. On remand, the court must make its own finding of fact, then apply the four-part test to those facts.

Slip op. at 7–8. The motions court having defined the applicable period as running from the date of the respondent's arraignment on the indictment, rather than from the date of indictment, the State concedes that a remand for speedy trial analysis is appropriate.

## II.

The constitutional standard applicable in speedy trial cases was enunciated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). "When the [pretrial] delay is of a sufficient length, it becomes 'presumptively prejudicial,' thereby triggering a 'balancing test [which] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis.' " *Brady v. State,* 288 Md. 61, 65, 415 A.2d 1126, 1128 (1980), quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–117. The factors to be weighed are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Because whether a period is presumptively prejudicial, or not,

depends upon the length of a pre-trial delay, the first factor "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* And this factor cannot be applied until it is determined from what point the period of delay is measured. *State v. Bailey,* 319 Md. 392, 410, 572 A.2d 544, 552 (1990).

It is well settled that "only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of [that] provision." *United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752, 758, *reh'g denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 479 (1971). Thus, it is only "[u]pon the intervention of an arrest or formal charge [that] the Sixth Amendment speedy trial right is invoked." *State v. Gee,* 298 Md. 565, 569, 471 A.2d 712, 714, *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). *See also Bailey,* 319 Md. at 410, 572 A.2d at 552.

In the usual case, the entire period from arrest or formal charge to trial is the applicable period for speedy trial analysis. Where, however, the prosecution is terminated and reinstituted, the period may be different; although the analysis will be the same, depending upon the fact finding, the period to which the analysis must be applied may be of shorter duration. *See United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In *MacDonald,* the Supreme Court held that "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." 456 U.S. at 7, 102 S.Ct. at 1501, 71 L.Ed.2d at 703. In that case, MacDonald was charged by the Army with the murder of his wife and two daughters. After an extensive investigation in which a total of 56 witnesses were interviewed, the investigating officer recommended dismissal of the charges. Accepting the recommenda-

tion, the Commanding General dismissed the charges. Almost five years later, based on the continuing investigation of the Army's Criminal Investigation Division, made at the request of the Justice Department, MacDonald was indicted for those same three murders. The Supreme Court held that Mac-Donald had not been denied the right to a speedy trial. It rejected the notion, espoused by the Fourth Circuit Court of Appeals, that, notwithstanding their dismissal by the Army, the charges continued to be pending until MacDonald's indictment. *Id.* at 9–10, 102 S.Ct. at 1502–1503, 71 L.Ed.2d at 704–705. In that connection, the Court observed (*Id.* at 10–11 n. 12, 102 S.Ct. at 1503 n. 12, 71 L.Ed.2d at 705 n. 12):

> There is no allegation here that the Army acted in bad faith in dismissing the charges. This is not a case where the Government dismissed and later reinstituted charges to evade the speedy trial guarantee. The Army clearly dismissed its charges because the Commanding General of MacDonald's unit, following the recommendation of the Article 32 investigating officer, concluded that they were untrue.

> There is nothing to suggest that the Justice Department acted in bad faith in not securing an indictment until January, 1975. After the Army dismissed its charges, it continued its investigation at the request of the Justice Department; the Army's initial 13–volume report was not submitted to the Justice Department until June, 1972, and supplemental reports were filed as late as August 1973. Within a year, the Justice Department completed its review of the massive evidence thus accumulated and submitted the evidence to a Grand Jury. The grand jury returned the indictment five months later.

> Plainly, the indictment of an accused—perhaps even more so the indictment of a physician—for the heinous and brutal murder of his pregnant wife and two small children is not a matter to be hastily arrived at either by the prosecution authorities or by a grand jury. The devastating consequences to an accused person from the very fact of such an indictment is a matter which responsible prosecutors must

weigh carefully. The care obviously given the matter by the Justice Department is certainly not any indication of bad faith or deliberate delay.[4]

### III.

■ Both the State and the respondent now recognize the applicability of the rule of *MacDonald* to this case. Moreover, they both recognize that it presupposes that the termination of the prosecution was done in good faith. The State maintains that the record reflects that the State acted in good faith, there being, "[a]t the hearing before Judge McCullough, ... no suggestion by defense that the State had acted in bad faith." The State's brief at 18. On the other hand, the respondent argues to the contrary, suggesting that "[t]he record, in fact, shows a lack of due diligence on the part of the State." The Respondent's brief at 6.

The parties also disagree as to whether the period from the initial arrest to dismissal of the charges ought to be counted in the speedy trial analysis. The State maintains that it should not, emphasizing that the charges were dismissed in good faith. It also points to our treatment in *Curley v. State*, 299 Md. 449, 474 A.2d 502 (1984), of the pre-dismissal period, in the Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 591, Rule

---

**4.** Implicitly, therefore, if the prosecution was not terminated in good faith, *i.e.*, it was done to avoid the consequences of a violation of the speedy trial right, then the period between dismissal and indictment is included in the speedy trial calculus. This is generally consistent with the approach we took in *Curley v. State*, 299 Md. 449, 459, 474 A.2d 502, 508 (1984). In that case, *which involved the statutory speedy trial requirement, see* Maryland Code (1957, 1992 Repl.Vol.) Art. 27 § 591 and Maryland Rule 4–271 (formerly Maryland Rule 746), we held:

> [W]hen a circuit court criminal case is nol prossed, and the state later has the same charges refiled, the 180–day period for trial prescribed by § 591 and Rule 746 ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution. If, however, it is shown that the nol pros had the purpose or the effect of circumventing the requirements of § 591 and Rule 746, the 180–day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.

*Id.* at 462, 474 A.2d at 508.

4–271 context, the recognition by the dissenting justices in
*MacDonald* that such period is not to be considered, and the
perceived need to interpret the constitutional speedy trial
right consistently with the statutory right. For the respon-
dent's part, he argues that the rationale for the Rule of
*MacDonald* "simply does not apply to exclude the period of
time the charges were pending against a defendant," citing
*United States v. Columbo,* 852 F.2d 19 (1st Cir.1988).

## IV.

In the Court of Special Appeals, with respect to his speedy
trial right, the respondent's argument was premised on the
Sixth Amendment of the United States Constitution. In this
Court, *albeit* presented by the State, the same predicate is
advanced. Consequently, what the Supreme Court of the
United States has said on the subject is binding on this Court.
Accordingly, the Rule of *MacDonald* applies to the case *sub
judice*—"the Speedy Trial Clause has no application after the
Government, acting in good faith, formally drops charges."
*MacDonald,* 456 U.S. at 7, 102 S.Ct. at 1501, 71 L.Ed.2d at
703. As to that, as we have seen, the parties are agreed.
Thus, where it is shown that the State has acted in good faith,
we hold that the period between the good faith termination of
a prosecution and the reinstitution of that prosecution, in this
case, the indictment on May 8, 1990, will not be considered in
the speedy trial analysis.[5]

---

**5.** This holding is consistent with decisions from other courts, Federal
and State. *See United States v. Koller,* 956 F.2d 1408, 1413 (7th
Cir.1992); *United States v. Meyer,* 906 F.2d 1247, 1251 (8th Cir.1990);
*United States v. Dyal,* 868 F.2d 424, 429 (11th Cir.1989); *United States
v. Columbo,* 852 F.2d 19, 24 (1st Cir.1988); *United States v. Wallace,*
848 F.2d 1464, 1469 (9th Cir.1988); *United States v. Mize,* 820 F.2d
118, 121 (5th Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98
L.Ed.2d 355 (1987); *State v. Johnson,* 564 A.2d 364, 367–68 (Del.Su-
per.1989); *Wooten v. State,* 262 Ga. 876, 426 S.E.2d 852, 855–56
(1993); *Commonwealth v. Miles,* 816 S.W.2d 657, 659 (Ky.App.), *cert.
denied,* 816 S.W.2d 657 (Ky.1991); *In the Matter of the Welfare of G.D.,*
473 N.W.2d 878, 882 (Minn.App.1991); *State v. Trammell,* 240 Neb.
724, 484 N.W.2d 263, 267–68 (1992); *State v. Adams,* 133 N.H. 818,
585 A.2d 853, 855–56 (1991); *State v. LeFurge,* 222 N.J.Super. 92, 535

We turn now to the question whether the period between the initial arrest and the dismissal in the District Court must be counted. In *United States v. Marion*, 404 U.S. at 313, 92 S.Ct. at 459, 30 L.Ed.2d at 702, the Court recognized that the Sixth Amendment "guarantee[s] to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him." This is consistent with the interests which the Sixth Amendment speedy trial right seeks to protect, *i.e.*, "to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on a bail, ... to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges," *MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704, "to minimize anxiety and concerns accompanying public accusations and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607, 611 (1969). *See also Marion,* 404 U.S. at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 478. Just as the speedy trial guarantee ceases to be applicable when charges are dismissed in good faith, *MacDonald,* 456 U.S. at 8, 102 S.Ct. at 102, 1502, 71 L.Ed.2d at 704, if the charges are dismissed in good faith, it is likewise not applicable to the period preceding the dismissal, the charges having been disposed of "with the dispatch that is appropriate." *Marion,* 404 U.S. at 313, 92 S.Ct. at 459, 30 L.Ed.2d at 474. Indeed, if the interests to be protected

---

A.2d 1015, 1017–18 (App.Div.), *cert. denied,* 111 N.J. 568, 546 A.2d 498 (1988); *State v. McCaskill,* 523 A.2d 883, 884–85 (R.I.1987); *State v. Chapman,* 289 S.C. 42, 344 S.E.2d 611, 612–13 (1986); *Deeb v. State,* 815 S.W.2d 692, 705–06 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992). *State v. Trafny,* 799 P.2d 704, 706 (Utah 1990); *State v. Estabrook,* 68 Wash.App. 309, 842 P.2d 1001 *cert. denied,* 121 Wash.2d 1024, 854 P.2d 1084 (1993). In *State v. Manes,* 112 N.M. 161, 812 P.2d 1309, 1317 (N.M.App.1991), without mentioning *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the court declined to count in the speedy trial analysis, the period of delay between the defendant's discharge after preliminary hearing and his reindictment.

against are not entitled to any further protection after good faith dismissal of charges, those same interests can have no greater existence simply because they preceded the dismissal. That was recognized by Mr. Justice Marshall in dissent in *MacDonald.* *See* 456 U.S. at 21, n. 7, 102 S.Ct. at 1509, n. 7, 71 L.Ed.2d at 712, n. 7. *See also United States v. Koller,* 956 F.2d 1408, 1413 (7th Cir.1992); *United States v. Moran,* 759 F.2d 777, 783 (9th Cir.1985); *United States v. Pajari,* 715 F.2d 1378, 1384 (8th Cir.1983). This approach is also logical and makes common sense. Moreover, it is consistent with the result we reached, and the analysis we used, in *Curley v. State,* 299 Md. at 462, 474 A.2d at 508. We agree with the State that, notwithstanding that the statutory speedy trial right does not codify the constitutional right, there is virtue in giving a consistent construction to any time calculations required by the two rights. We hold, therefore, that where the State terminates a prosecution in good faith, *i.e.* it does not intend to circumvent the speedy trial right, and the termination does not have that effect, the period preceding the earlier dismissal is not counted in the speedy trial analysis.

▇▇ The respondent relies on *United States v. Columbo, supra,* for the proposition that, because the prejudice is the same, "[t]he rationale for tolling the speedy trial clock during the period when a defendant is not under arrest or indictment simply does not apply to excluding the period of time when charges were pending against a defendant." *See* Respondent's brief at 7. That case, however, is not necessarily inconsistent with the approach we propose. In *Columbo,* the Court held that for speedy trial purposes, the period between initial arrest and dismissal of charges is included in the speedy trial calculus, "otherwise, the Government would be able to nullify a defendant's speedy trial rights by the simple expedient of dismissal and reindicting whenever speedy trial time was running out on its prosecution." *Id.* at 23–24. Necessarily, the court reasoned, the reference in *MacDonald* to exclusion of the period "after the Government, acting in good faith, formally drops charges," 456 U.S. at 7, 102 S.Ct. at 1501, 71 L.Ed.2d at 703, "was only meant to exclude the time between

indictments, not the time of a first indictment." *Columbo,* 852 F.2d at 24 n. 4. *See also State v. Trammell,* 240 Neb. 724, 484 N.W.2d 263, 266 (1992) (counting period from arrest to dismissal of charges, but without analysis); *State v. Adams,* 133 N.H. 818, 585 A.2d 853, 855 (1991).[6] It is significant that the court did not address whether, in dismissing the charges, the State was acting in good faith. Indeed, it would appear that the court's approach is consistent with the assumption that the State was not acting in good faith. *See Curley,* 299 Md. at 459, 474 A.2d at 508 (dismissal has purpose or effect of circumventing the speedy trial requirements). As we have indicated, however, it is only when the good faith of the State is not at issue that the interests to be protected by the Sixth Amendment would have need of vindication.[7]

### V.

The State's good faith in dismissing the charges in the District Court was neither presented to, nor decided by, the motions court. That court's decision to start the running of the speedy trial clock upon the arraignment of the respondent in connection with the second prosecution was not premised upon the State having acted in good faith when it terminated the initial prosecution. Nor was the State's proffer made for the purpose of establishing its good faith in that regard. Both the State and the respondent believed that, in this case, the speedy trial clock began to tick upon the respondent's initial arrest. Neither believed, nor argued, that it was tolled for

---

6. Prior to *State v. Adams,* 133 N.H. 818, 585 A.2d 853 (1991), the Supreme Court of New Hampshire had held that, for speedy trial purposes, the period between arrest and dismissal of the initial prosecution was not counted where the State *nolle prossed* that prosecution in good faith. *State v. Quinlan* 122 N.H. 51, 440 A.2d 13, 14 (1982).

7. Even though the State may have acted in good faith, the defendant need not be without remedy. Predismissal delay of sufficient length may implicate due process and thus, require analysis under the due process clause of the Fourteenth Amendment. *See United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758 (1977). To prevail, the defendant would have to show "that the [pre-dismissal] delay ... caused substantial prejudice to [his or her] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971).

any reason thereafter; hence, both the respondent and the State believed that the entire period starting with the initial arrest, had to be considered when determining whether the respondent's speedy trial right had been abridged. The State's proffer as to what it did, and why, was made for the purpose of demonstrating, on the merits, that the respondent's speedy trial right was not violated, an argument that was not resolved because the court determined that the pretrial delay was not of sufficient length to be presumptively prejudicial. This also explains why the respondent never responded to the State's proffer.

Nor was the issue of the State's good faith in dismissing the charges at issue on the appeal to the Court of Special Appeals; again, it was neither presented to, nor decided by that court. Both the State and the respondent continued to believe that the speedy trial clock began to tick upon the respondent's initial arrest. While the State did acknowledge that a different analysis might apply where an arrest is followed by dismissal of the charges and subsequent reinstitution of those charges, it did not argue that it acted in good faith and, for that reason, the period should not be counted. And, the issue not being relevant to his position, understandably, the respondent did not argue that the State acted in bad faith. It is on appeal to this Court that, for the first time, the State takes the position that the record reflects that it acted in good faith. Interestingly, the respondent does not agree. What is clear is that the issue of the State's good or bad faith has never been squarely presented for decision and, in fact, has not been decided. Accordingly, it is an issue, in addition to the speedy trial merits, that has to be resolved on remand.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS, NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*