*Raghbir Singh v. State of Maryland*, No. 3365, Sept. Term 2018.  Opinion by Arthur, J.

**CRIMINAL PROCEDURE—CONSTITUTIONAL RIGHT TO SPEEDY TRIAL**

To evaluate whether a defendant has been denied the constitutional right to a speedy trial, the length of delay usually includes the entire period from an initial arrest or formal charge until trial.  The starting point may be different when the State brings charges in an original indictment and then brings additional charges in a superseding indictment.

As to any charge included in both the original indictment and the superseding indictment, the starting point is the date of the original indictment.  As to any charge added in the superseding indictment, the starting point is the date of the superseding indictment unless (1) the additional charge is based on the same conduct previously charged and (2) the State could have, with diligence, brought the additional charge at the time of the original indictment.

Circuit Court for Montgomery County
Case No. 134894C

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3365

September Term, 2018

_____

RAGHBIR SINGH

v.

STATE OF MARYLAND

_____

Berger,
Arthur,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  August 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On July 11, 2017, Jennifer Johnson died from a drug overdose. In March of 2018, a Montgomery County grand jury indicted Raghbir Singh for the murder of Johnson, distribution of heroin, and conspiracy to distribute heroin. In December of 2018, the grand jury issued a superseding indictment with additional charges related to the distribution of carfentanil.[1] The State subsequently withdrew the original indictment.

Singh moved to dismiss the charges against him, contending that the State had violated his constitutional right to a speedy trial. The Circuit Court for Montgomery County denied the motion, based on the premise that the period of delay did not begin until the grand jury issued the superseding indictment. Singh entered a conditional guilty plea, reserving his right to seek appellate review of the denial of his motion to dismiss.

In this appeal, Singh contends that the circuit court erred when it denied his motion to dismiss on speedy trial grounds. As explained in this opinion, we conclude that the court evaluated that motion based on an erroneous premise. Pursuant to Maryland Rule 8-604(d), we shall remand the case without affirming, reversing, or modifying the judgment. The purpose of the remand proceedings is for the court to reevaluate the alleged violation of Singh's right to a speedy trial.

---

[1] This opinion uses the term "superseding indictment" because both parties have used that term. That term has no special meaning under the Maryland Code or Maryland Rules. Generally speaking, a superseding indictment is a "second or later indictment that includes additional charges or corrects errors in an earlier one." *Indictment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Death of Jennifer Johnson

On June 11, 2017, Jennifer Johnson was found dead inside her apartment in Montgomery County.  Near her body, the police recovered drug paraphernalia (a syringe and a burnt spoon with residue) and her cell phone.

Shortly before her death, Johnson had exchanged text messages with Amy Bormel.  The text messages indicated that Bormel had arranged for a male acquaintance to deliver heroin to Johnson's workplace in exchange for $40 in cash.

A medical examiner later concluded that Johnson died as a result of a combined intoxication of carfentanil (an analogue of the synthetic opioid fentanyl), alprazolam (an anti-anxiety medication), and free morphine.  According to the State's discovery disclosures, "heroin breaks down to free morphine" inside the human body.

### B.    Controlled Purchase of Heroin from Bormel

On June 12, 2017, the day after Johnson's death, police officers worked with a confidential informant to arrange a controlled purchase of heroin from Bormel.

The officers observed Bormel leaving her residence with Raghbir Singh, who drove Bormel into Baltimore City.  Later, on a phone call, Bormel told the informant that she was taking her "man" to a doctor's appointment.  Bormel asked to meet the informant at a shopping center near the doctor's office.  Bormel alone met the informant and exchanged heroin for cash.

Afterwards, the officers arrested Bormel and recovered another bag of heroin from her person.  Based on its appearance, the officers believed that the heroin was mixed with

carfentanil. The officers also arrested Singh while he was standing outside the doctor's office and seized a cell phone from his person.

Separately, Bormel and Singh made recorded statements in custody. The officers obtained a warrant to search Bormel's residence, where they seized phones and electronic devices. A few weeks later, the officers obtained a warrant to search the devices for evidence of the distribution of heroin or carfentanil.

### C.      Charges Associated with the Controlled Purchase from Bormel

On June 13, 2017, one day after the arrests, the State brought charges against Bormel and Singh in the District Court of Maryland for Montgomery County. Bormel was charged with distribution of a controlled dangerous substance, possession of a controlled dangerous substance with intent to distribute it, and possession of a controlled dangerous substance. Singh was charged with conspiracy to distribute a controlled dangerous substance and conspiracy to possess a controlled dangerous substance with intent to distribute it. At the State's request, Singh was held without bond.

The district court forwarded both sets of charges to the Circuit Court for Montgomery County, where the State obtained indictments against Bormel and Singh. The indictment against Bormel charged her with two counts of distribution of a controlled dangerous substance, three counts of possession of a controlled dangerous substance with intent to distribute it, and one count of possession of a controlled dangerous substance.[2] The indictment against Singh alleged that he had conspired with

---

[2] The indictment against Bormel is not part of the record in this appeal. The docket entries do not specify the substances that she was accused to have distributed.

3

Bormel to distribute heroin, to distribute carfentanil, and to possess heroin with intent to distribute it.

At the time of his arrest, Singh had been released on bond pending a trial on unrelated burglary charges. On February 13, 2018, Singh entered a guilty plea in that case to one count of second-degree burglary. Singh received a sentence of 10 years of imprisonment, with all but three years suspended. Singh began serving the remainder of that sentence at a correctional facility in Washington County.

The circuit court scheduled the trial on the charges against Singh to begin on February 28, 2018. Singh moved to suppress physical evidence seized upon his arrest (i.e., his cell phone) and the statement that he made in custody. At a hearing on February 23, 2018, the court determined that police officers had arrested Singh without probable cause, and thus that the evidence obtained as a result of the arrest must be suppressed.

One week later, when the trial was scheduled to begin, the State entered a nolle prosequi as to the charges against Singh. The prosecutor stated that the State was unable to proceed because it had lost contact with the informant.

Based on her sale of heroin to the informant, Bormel entered a guilty plea to one count of distribution of a controlled dangerous substance on April 18, 2018. The court sentenced Bormel to 10 years of imprisonment and suspended all but one year of that sentence.

**D.**     **Original Indictment for the Killing of Johnson**

On March 29, 2018, a Montgomery County grand jury issued indictments against Bormel and Singh for the killing of Johnson and for heroin distribution.

4

The indictment against Singh included three counts.  The first count alleged that Singh "feloniously killed Jennifer Johnson[.]"  This count used the statutory short form of an indictment for murder or manslaughter.[3]  The second count alleged that Singh unlawfully distributed heroin.  The third count alleged that Singh conspired with Bormel to distribute heroin.

At the State's request, the circuit court issued a bench warrant authorizing Singh's arrest in Montgomery County.  The State later asked the court to recall that warrant because Singh was incarcerated in Washington County, serving the sentence for his burglary conviction.  The State secured Singh's presence for subsequent court appearances by obtaining writs directing the Maryland Correctional Transportation Unit to transport him to the Montgomery County courthouse.

Counsel entered an appearance on behalf of Singh and filed, among other things, a written demand for a speedy trial.  During discovery, the State disclosed an autopsy report, in which the medical examiner concluded that Johnson died from a combined intoxication of carfentanil, alprazolam, and free morphine.[4]

Over the State's objection, the court ordered the State to submit a bill of particulars.  In response, the State alleged that, on July 11, 2017, Singh "caused the death of Jennifer Johnson" through "his involvement in the sale of heroin and carfentanil to Ms. Johnson."  The State alleged that, on that date, Singh and Bormel had "conspired to

---

[3] *See* Md. Code (2002, 2012 Repl. Vol.), § 2-208 of the Criminal Law Article.

[4] The record does not disclose the date of the medical examiner's report.

5

distribute heroin and carfentanil to Johnson" and that Singh had "provided heroin and carfentanil" to Johnson. The State wrote that Singh was "charged with murder under the theory of depraved heart murder[,]" based on the allegation that he "acted with extreme disregard for the life of Ms. Johnson and the potential consequences of the distribution of heroin and carfentanil."

The State initially moved for a joint trial against both Bormel and Singh. At a hearing in July of 2018, however, the State withdrew that motion. The prosecutor explained that the State preferred to try the defendants separately because the State intended to offer the statements that each of them made after their arrests. The prosecutor acknowledged that the State intended to "relitigate" the admissibility of Singh's statement, which had already been suppressed in the previous case.

The State then requested a postponement of the trial against Singh. After a scheduling discussion with counsel, the trial judge determined that the next available date for the beginning of a four-day trial would be in January of 2019. The trial judge observed that a postponement until that time would cause the trial to begin after the 180-day time period prescribed by Md. Rule 4-271.[5]

The trial judge referred the postponement request to the administrative judge. Defense counsel told the administrative judge that Singh "did not want to wait" until January 2019 for his trial. The administrative judge asked Singh himself whether he

---

[5] The trial of a criminal case in the circuit court must begin no later than 180 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court. Md. Rule 4-271(a). For good cause shown, the administrative judge may postpone the trial beyond that 180-day period. *Id.*

6

would waive his right to have his case tried within the 180-day time period, and Singh replied: "I wish to be tried within 180 days." Finding that "good cause" existed for the postponement, the administrative judge postponed the trial until January 14, 2019.[6]

### E. The Superseding Indictment

At a hearing on December 14, 2018, one month before the rescheduled trial date, the prosecutor said that the State wished to "put on the record" that Singh had rejected an offer to plead guilty to heroin distribution in exchange for "a sentence in the seven to ten year range."

The prosecutor then announced that the State would seek "a superseding indictment" that would include additional charges for the distribution of carfentanil, which might result in "an additional 20 year maximum" sentence, and the distribution of a mixture of heroin and carfentanil, which might result in "an additional ten years."[7] The prosecutor said that the State planned to "make a plea offer" to Bormel and "potentially ask her to testify" against Singh, but that these actions "had not been done yet." The prosecutor concluded: "We simply did not do the superseding indictment before today to

---

[6] The record is unclear regarding the defense's position on the postponement request. Almost immediately after Singh declined to waive his right to be tried within the 180-day period, the administrative judge asked whether it was "correct" to say that "the defense [wa]s not objecting to the postponement." Defense counsel replied, "That's correct."

[7] Effective May 25, 2017, the General Assembly created an additional offense, with a penalty of up to 10 years of imprisonment, for the knowing distribution of fentanyl, any analogue of fentanyl, or a mixture that contains heroin and a detectable amount or fentanyl or any analogue of fentanyl. *See* 2017 Md. Laws ch. 569 (enacting § 5-608.1 of the Criminal Law Article).

give [Singh] an opportunity to have one last chance at the plea offer."

In response, defense counsel "object[ed] to any postponement of the trial date[.]" Defense counsel added that Singh wanted to "have his day in court as soon as possible."

On December 20, 2018, the grand jury issued an eight-count superseding indictment against Singh.[8]  The first two counts charged Singh with second-degree murder of Johnson and involuntary manslaughter of Johnson.  The next three counts alleged that Singh distributed heroin, distributed carfentanil, and knowingly distributed a mixture that contained heroin and carfentanil.  The final three counts alleged that Singh conspired with Bormel to distribute heroin, to distribute carfentanil, and to distribute a mixture that contained heroin and carfentanil.

The court assigned a new case number in connection with the superseding indictment.  In that case, the State requested a hearing to establish bond conditions.  The State asserted that, "[i]n the previous case," Singh "never had bond conditions set" because he was incarcerated for the sentence on his burglary conviction.  The State informed the court that Singh was scheduled for release under the terms of that sentence. The State asserted that "[o]nce bond conditions [were] in place," the State would enter a nolle prosequi as to the charges from the original indictment.

On January 3, 2019, Singh appeared for a hearing in the case associated with the original indictment.  The State entered a nolle prosequi as to the charges from the original indictment.  Defense counsel "strenuously object[ed] to the entry of a nolle prosequi" and

---

[8] Along with the entry of appearance of counsel on behalf of the State, the State filed a line informing the clerk of the circuit court: "This is a superseding indictment."

noted that Singh had previously asserted his right to a speedy trial.

The court proceeded to establish bond conditions in the case resulting from the superseding indictment. The court set the bond amount at $100,000 and imposed additional conditions for supervision in the event that Singh might be released on bond before his trial.

In the new case, defense counsel filed a written demand for a speedy trial. Defense counsel renewed the discovery requests that it had made in the earlier case. In response, the State wrote that "[d]iscovery materials regarding the [new] case have been provided" to the defense "in the related case." The State said: "All discovery was provided in that case and the State is adopting that same discovery."

### F.       Motion to Dismiss on Speedy Trial Grounds

The court scheduled a five-day trial on the charges in the superseding indictment to begin on May 13, 2019. Singh moved to dismiss the charges against him, contending that the State had violated his constitutional right to a speedy trial.

In support of his motion, Singh argued that the "starting point" for measuring the length of delay was either July 12, 2017, when he was arrested for suspected involvement in Bormel's sale of heroin to the informant, or March 29, 2018, when he was first indicted for the killing of Johnson. Singh contended that, using either starting point, the length of delay was presumptively prejudicial and resulted in a violation of his right to a speedy trial. Singh further contended that the State "intentionally circumvented the scheduled trial date . . . by filing a superseding indictment." Singh argued that the purpose of the superseding indictment was to subject him to "penalty enhancement" after

9

he had rejected the State's plea offer.

Opposing the motion, the State contended that, for the purpose of assessing Singh's right to a speedy trial, the period of delay did not begin until December 20, 2018, the date of the superseding indictment. The State asserted that the "superseding indictment was filed in good faith to allow the State to proceed on additional charges[.]" The State argued that the subsequent nolle prosequi of the original indictment had the effect of "restart[ing] the speedy trial clock."

On February 19, 2019, the circuit court heard arguments on Singh's speedy trial motion. During the hearing, the court asked the prosecutor to explain why the State had pursued the additional charges. The prosecutor said that the superseding indictment included three additional counts for conspiracy "because the State in the meantime . . . was able to secure the testimony of Ms. Bormel against Mr. Singh[.]" The prosecutor said that the State, through the superseding indictment, was "simply . . . presenting a different theory of the case with the conspiracy charges[.]" According to the prosecutor, after Bormel "agreed that she would testify" against Singh, the State was "able to proceed on a conspiracy theory[.]"[9]

Defense counsel disputed the premise that the State had "secured" Bormel's testimony before the date of the superseding indictment. The prosecutor acknowledged that, as of that time, prosecutors were merely in "[d]iscussions" from which it "appeared"

---

[9] The prosecutor's arguments relied on the incorrect premise that the original indictment did not include the conspiracy charge. In fact, the original indictment had already charged Singh with conspiring with Bormel to distribute heroin.

10

that they might reach a plea agreement with Bormel.

Defense counsel argued that the purpose of the superseding indictment was to use the threat of additional penalties "to get the attention" of Singh after he rejected the State's plea offer. Defense counsel asserted that, in fact, there was no change in the prosecution's theory, as the State previously submitted a bill of particulars alleging that Singh and Bormel distributed heroin and carfentanil to Johnson.

The circuit court concluded that State did not "deliberately" enter the nolle prosequi as to the original indictment for the purpose of "avoid[ing] a speedy trial problem[.]" The court said that, according to the prosecutor's proffer, the State added the new counts in "anticipation of new evidence which would have been the testimony of Ms. Bormel[.]"

The court concluded that the relevant timeframe was the period after "the [superseding] indictment . . . and not any prior indictment." Observing that only two months had elapsed since the issuance of the superseding indictment, the court said that it did not "believe that the timeframe ha[d] been reached whereby prejudice analysis even begins to occur[.]" On that basis, the court denied Singh's motion to dismiss.

### G.     Judgment Resulting from Singh's Conditional Guilty Plea

At the same hearing in which the court denied the motion to dismiss, the parties informed the court that Singh had agreed to enter a conditional plea of guilty. Singh reserved his right to seek appellate review of the adverse ruling on his motion to dismiss

11

on speedy trial grounds.[10]  Singh agreed to plead guilty to the charge of involuntary manslaughter from the second count of the superseding indictment.  The State agreed to a "six-year cap on incarceration," with credit for time served since Singh's arrest on July 12, 2017.

The court accepted the conditional guilty plea and sentenced Singh to 10 years of imprisonment, with all but six of those years suspended, with credit for one year and 223 days of time served.  The court also imposed five years of supervised probation.  The State entered a nolle prosequi as to the remaining counts.  Thereafter, Singh noted a timely appeal.[11]

Meanwhile, on February 21, 2019, Bormel entered a guilty plea to one count of distribution of a controlled dangerous substance, based on her role in the sale of heroin to Johnson.  The court sentenced Bormel to 20 years of imprisonment, suspended all but 187 days of time served, and imposed five years of supervised probation.

## DISCUSSION

This appeal presents a single question: "Did the circuit court err in denying

---

[10] Maryland Rule 4-242(d)(2) permits a defendant to enter a conditional plea of guilty with consent of the court and the State.  As part of the conditional plea, "the defendant may reserve the right to appeal one or more issues specified in the plea that (A) were raised by and determined adversely to the defendant, and, (B) if determined in the defendant's favor would have been dispositive of the case."  *Id.*  This right of appeal "is limited to those pretrial issues litigated in the circuit court and set forth in writing in the plea."  *Id.*

[11] While this appeal was pending, the Court of Appeals issued its opinion in *State v. Thomas*, 464 Md. 133 (2019).  The Court held that, in some circumstances, evidence that the defendant sold heroin to a person who later died from an overdose may sustain a conviction for involuntary manslaughter.  *Id.* at 139-40.

[Singh's] motion to dismiss on constitutional speedy trial grounds?" Singh contends that the circuit court used the incorrect time period to evaluate his right to a speedy trial. He asks this Court to remand the case for a new hearing on the motion to dismiss.

In all criminal prosecutions, the accused has the right to a speedy trial. U.S. Const. amend. VI; Maryland Declaration of Rights art. 21. This guarantee serves "'to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)). The remedy for a violation of this right is dismissal of the charges. *See, e.g.*, *Betterman v. Montana*, 578 U.S. ___, ___, 136 S. Ct. 1609, 1615 (2016).

This Court reviews "without deference a trial court's conclusion as to whether a defendant's constitutional right to a speedy trial was violated." *Howard v. State*, 440 Md. 427, 446-47 (2014). Although we make "our own independent constitutional analysis[,]" we accept the trial court's "findings of fact unless clearly erroneous." *Glover v. State*, 368 Md. 211, 220-21 (2002). This analysis should be "practical, not illusionary, realistic, not theoretical, and tightly prescribed, not reaching beyond the peculiar facts of the particular case." *State v. Bailey*, 319 Md. 392, 415 (1990).

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court recognized that it is "impossible to determine with precision" when the right to a speedy trial has been denied. *Id.* at 521. The determination of whether a particular defendant has been denied a speedy trial must be made "on an ad hoc basis," using a "balancing test" that examines the

following factors: "Length of delay, the reason for the delay, the defendant's assertion of [the] right, and prejudice to the defendant." *Id.* at 530. Maryland courts use the same four-factor test to evaluate alleged violations of Article 21 of the Maryland Declaration of Rights. *See, e.g.*, *Divver v. State*, 356 Md. 379, 388 (1999).

The first factor, the length of delay, "is to some extent a triggering mechanism." *Barker v. Wingo*, 407 U.S. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors[.]" *Id.* "[B]y definition," criminal defendants "cannot complain that the government has denied [them] a 'speedy' trial if it has, in fact, prosecuted [the] case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 652 (1992).

There is no fixed duration at which the delay before trial becomes presumptively prejudicial. *See, e.g.*, *Glover v. State*, 368 Md. at 223. The Supreme Court has noted that, "[d]epending on the nature of the charges, . . . courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. at 652 n.1. The Court of Appeals consistently has held that delays of slightly longer than one year require scrutiny under the four-factor balancing test. *See Glover v. State*, 368 Md. at 223-24; *Divver v. State*, 356 Md. at 389; *Brady v. State*, 291 Md. 261, 265-66 (1981); *Epps v. State*, 276 Md. 96, 111 (1975). On the other hand, there is an overwhelming consensus that delays shorter than six months are not "of constitutional dimension." *State v. Gee*, 298 Md. 565, 578 & n.11 (1984).

"A person becomes an 'accused'" within the meaning of the Speedy Trial Clause "*only* upon [an] arrest or the filing of an indictment, information or other formal charge

14

against [the person]." *Id.* at 568 (emphasis in original). Accordingly, "the length of delay is measured from the date of arrest or filing of indictment, information, or other formal charges to the date of trial." *Divver v. State*, 356 Md. at 388-89. "In the usual case," the delay includes "the entire period from arrest or formal charge to trial[.]" *State v. Henson*, 335 Md. 326, 333 (1994). "Where, however, the prosecution is terminated and reinstituted, the period may[,]" depending on the circumstances, "be of shorter duration." *Id.*

In *United States v. MacDonald*, 456 U.S. 1 (1982), the Supreme Court considered whether the time between the dismissal of one set of charges and the initiation of a second set of charges should be considered in evaluating the right to a speedy trial. *Id.* at 3. In that case, a federal grand jury indicted MacDonald for the murder of three people, more than four years after the Army had dismissed military charges against him for the same murders. *Id.* at 5.

The Supreme Court recognized that "the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused[.]" *Id.* at 6 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). "Similarly," the Court reasoned that "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." *Id.* at 7. The Court reasoned:

> Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. . . . [W]ith no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges

15

against him have been dismissed, "a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *United States v. Marion*, [404 U.S. at 321]. Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

*Id.* at 8-9 (footnotes omitted).

The Court reasoned that counting all of the time from MacDonald's initial arrest would mean, "in essence, that criminal charges were pending against MacDonald during the entire period between his military arrest and his later indictment on civilian charges." *Id*. at 9. The Court observed that, "[d]uring the intervening period, MacDonald was not under arrest, not in custody, and not subject to any 'criminal prosecution.'" *Id.* at 10. "[O]nce the charges instituted by the Army were dismissed, MacDonald was legally and constitutionally in the same posture as though no charges had been made." *Id.*[12]

In *State v. Henson*, 335 Md. 326 (1994), the Court of Appeals recognized that "the period between [a] good faith termination of a prosecution and the reinstitution of that prosecution . . . will not be considered in the speedy trial analysis." *Id*. at 336. The Court considered whether the period preceding the dismissal "must be counted." *Id.* at 337. The Court reasoned: "Just as the speedy trial guarantee ceases to be applicable when charges are dismissed in good faith, if the charges are dismissed in good faith, it is

---

[12] The Court differentiated between a true termination of a criminal prosecution and a mere suspension of proceedings. *United States v. MacDonald*, 456 U.S. at 8 n.8. In *Klopfer v. North Carolina*, 386 U.S. 213, 221 (1967), the Court held that a defendant had been denied a speedy trial through a procedure that permitted a prosecutor to suspend a prosecution indefinitely, with leave to reinstate the case at a later date.

likewise not applicable to the period preceding the dismissal[.]" *Id.* (citation omitted). The Court held, "therefore, that where the State terminates a prosecution in good faith, *i.e.* it does not intend to circumvent the speedy trial right, and the termination does not have that effect, the period preceding the earlier dismissal is not counted in the speedy trial analysis." *Id.* at 338.[13]

In the present case, the parties disagree about which date should be the starting point of the speedy trial analysis. The original indictment, issued on March 29, 2018, charged Singh with murder (or manslaughter) of Johnson,[14] distribution of heroin, and conspiracy to distribute heroin. The superseding indictment, issued on December 20, 2018, recharged each of those offenses and added four new counts related to the distribution of carfentanil. Later, on January 3, 2019, the State entered a nolle prosequi as to the original indictment.

Singh contends that "the speedy trial clock should have started no later than" March 29, 2018, the date of the original indictment. Singh argues that ignoring the period in which charges were already pending would "diminish the value" of the right to a speedy trial. Singh also argues that *Henson* "should not apply where the State uses a superseding indictment merely to add charges[.]" Singh points out that the State could

---

[13] In other words, *Henson* holds that the speedy trial period restarts when the State reinstitutes charges after a good-faith dismissal. Most courts hold that period of delay resumes upon the reinstitution of charges. *See* 5 Wayne R. LaFave, *Criminal Procedure* § 18.1(c), at 121-22 (4th ed. 2015).

[14] The State acknowledges that the first count of the original indictment included an allegation of manslaughter as well as second-degree murder. *See, e.g.*, *Nicholson v. State*, 239 Md. App. 228, 258 (2018).

have added any new counts in a "supplemental indictment" rather than a superseding indictment. Singh contends that the State "does not act in good faith when obtaining a superseding indictment and dismissing the former indictment merely to add charges." According to Singh, "the only conceivable purpose for adding charges in this manner (as opposed to charging only the new counts in the new indictment) is to circumvent the speedy trial right as to the original charges[.]"[15]

The State contends that the circuit court "properly determined that the analysis should start from the filing of the superseding indictment on December 20, 2018." The State tells us: "When a defendant is recharged following a dismissal that was undertaken in good faith, *Henson* uncouples the two charging documents for purposes of speedy trial analysis." "Similarly here," the State says, the circuit court "properly analyzed the two indictments separately" after it "implicitly found that the prosecution acted in good faith."

The wording of the State's argument is revealing. Unlike the defendant in *Henson*, Singh was not "recharged following a dismissal." First, Singh was accused under one indictment. Later, he was accused of those same offenses and additional offenses under a second indictment. For two weeks, he was accused under both indictments. Eleven days before the trial on the first indictment, the State withdrew the first indictment so that it could move forward with the second.

---

[15] This opinion concerns the effect of a superseding indictment under the particular facts of this case. This opinion does not concern the potential effect of adding charges in some other manner, because those facts are not presented here.

18

The State was prosecuting Singh on charges of murder, manslaughter, heroin distribution, and conspiracy to distribute heroin on a continuous basis, beginning on the date of the original indictment. It is correct to say "that criminal charges were pending against [Singh] during the entire period" following the original indictment. *See United States v. MacDonald*, 456 U.S. at 9. At no point after March 28, 2018, the date of the original indictment, did the State restore him to "the same posture as though no charges had been made." *Id.* at 10. He remained an accused, within the meaning of the Sixth Amendment.

Singh's case is unlike *United States v. MacDonald*, 456 U.S. at 5, in which the defendant went more than four years without any charges pending against him, or *State v. Henson*, 335 Md. at 329, in which the defendant went nine months without any charges pending against him. Maryland courts have not yet extended *Henson* to cases in which the State dismisses one indictment after obtaining a superseding indictment. Whenever this Court has measured the delay from the date of the reinstitution of charges, the appellants experienced at least some period of time, following the dismissal, in which they were no longer accused. *See Greene v. State*, 237 Md. App. 502, 515 (2018); *Nottingham v. State*, 227 Md. App. 592, 601 (2016); *White v. State*, 223 Md. App. 353, 372-73 (2015); *Collins v. State*, 192 Md. App. 192, 200 (2010); *Clark v. State*, 97 Md. App. 381, 385 (1993).

Although there is no controlling case law on the effect of a superseding indictment on the speedy trial analysis, Singh has called attention to federal cases addressing the subject. On several occasions, federal courts have, without discussion, considered the

19

delay from the date of an initial arrest or indictment in cases where the government later obtained one or more superseding indictments. *See United States v. Loud Hawk*, 474 U.S. at 306, 314; *United States v. Black*, 830 F.3d 1099, 1102, 1112 (10th Cir. 2016); *United States v. Worthy*, 772 F.3d 42, 44, 48 (1st Cir. 2014); *United States v. Jeanetta*, 533 F.3d 651, 654, 656 (8th Cir. 2008); *United States v. Parker*, 505 F.3d 323, 326, 328-29 (5th Cir. 2007); *United States v. Oriedo*, 498 F.3d 593, 595, 597 (7th Cir. 2007); *United States v. King*, 483 F.3d 969, 971, 976 (9th Cir. 2007); *United States v. Watford*, 468 F.3d 891, 896-97, 902 (6th Cir. 2006). On other occasions, federal courts have expressly held that the delay began with an arrest or original indictment even though the government later obtained one or more superseding indictments. *See United States v. Black*, 918 F.3d 243, 259-60 (2d Cir. 2019); *United States v. Handa*, 892 F.3d 95, 106-07 (1st Cir. 2018); *United States v. Irizarry-Colón*, 848 F.3d 61, 68-70 (1st Cir. 2017); *United States v. Battis*, 589 F.3d 673, 679 & n.5 (3d Cir. 2009).

In reaching that conclusion, the First and Second Circuits emphasized that the purposes of the Speedy Trial Clause are to protect the accused from oppressive pretrial incarceration, the anxiety and concern resulting from criminal charges, and the risk that the passage of time might impair the defense. *United States v. Black*, 918 F.3d at 259; *United States v. Handa*, 892 F.3d at 105. Measuring the delay from the date of a superseding indictment would "ignore the fact that a defendant's liberty interests [have] been compromised since the original indictment was filed." *United States v. Black*, 918 F.3d at 258. Likewise, a defendant's "anxiety and concern regarding the charges and their potential consequences persist from the filing of the first indictment" and "only

20

increase" with the addition of new charges. *Id.* at 259.

Finally, "where charges on a superseding indictment arise from the same conduct as the original indictment, allowing the superseding indictment to start a new relevant speedy trial time period . . . would only exacerbate . . . concerns about aging evidence." *Id.* "[T]he prejudice to defendants associated with 'dimming memories' and the 'loss of exculpatory evidence' is often caused—and exacerbated—by the passage of time between the original charges and trial." *United States v. Handa*, 892 F.3d at 106. If the government could "reset the Sixth Amendment speedy trial clock's start date" by adding charges based on the same conduct, then it might be "too easy for the government to circumvent" the protections of the Speedy Trial Clause. *Id.* In particular, "those protections would fall" if the government could "use an indictment as a placeholder while contemplating more severe charges based on the same conduct[.]" *United States v. Black*, 918 F.3d at 259.

In this appeal, the State makes no argument that the approach used by these federal courts is faulty or in conflict with any binding precedent. The State cites no authority for the proposition that it advances—that when a superseding indictment brings additional charges, the length of delay for all charges should be measured from the date of the superseding indictment.

The State does point out, however, that the First Circuit concluded that "the start-date question is not subject to per se rules—e.g., that the date of the original indictment is always the start date, or that it is never the start date when a new indictment adds charges." *United States v. Handa*, 892 F.3d at 106. The First Circuit held:

21

> [T]he bringing of the additional charge does not reset the Sixth Amendment speedy trial clock to the date of a superseding indictment where (1) the additional charge and the charge for which the defendant was previously accused are based on the same act or transaction, or are connected with or constitute parts of the common scheme or plan previously charged, and (2) the government could have, with diligence, brought the additional charge at the time of the prior accusation.

*Id.* at 106-07.[16]

We think that this test strikes a proper balance. *Cf. Lee v. State*, 61 Md. App. 169, 175-76 (1985) (noting that "'[g]ood faith' in this context presupposes . . . diligence . . . in bringing a case to trial"). An indictment is not the endpoint for the collection of evidence. Prosecutors might later uncover additional evidence convincing them that they will be able to prove another offense beyond a reasonable doubt. Speedy trial analysis should not penalize the State for failing to charge every conceivable offense at once. On the other hand, the accused should not be subjected to a new post-accusation period of delay merely because the State later realized that another charge could have been included with the initial charge. *See United States v. Nixon*, 634 F.2d 306, 309 (5th Cir. 1981) (stating that the date of the initial charge should govern the speedy-trial analysis for a second charge "if the second charge is but a part of or only gilds the initial charge").

The State concedes here that, under the test established by the First Circuit, "the speedy trial analysis for the offenses that were charged in the original March 29, 2018

---

[16] The First Circuit and Second Circuit each rejected an alternative test, under which the delay with respect to the additional charge would be measured from the date of original indictment only if the additional charge was the "same offense," for double jeopardy purposes, as one of the original charges. *See United States v. Black*, 918 F.3d at 255; *United States v. Handa*, 892 F.3d at 105.

indictment begins on that date[.]"  The State suggests that "the speedy trial analysis for the charges that were newly added in the December 20, 2018 indictment" should "begin[] on that later date."  The circuit court never determined whether the State could have, with diligence, brought those additional charges at the time of the original indictment. Because this determination might involve factual findings, the circuit court should make that determination in the first instance.  *See State v. Henson*, 335 Md. at 340.

As a secondary argument, Singh argues that the starting point should be even earlier.  Singh argues that the period of delay should also include the time between the indictment of March 28, 2018, and his earlier arrest on June 12, 2017.  In Singh's appellate brief, Singh candidly recognizes that this secondary argument requires "a heavier lift" than his main argument.  This argument fails for at least two reasons.

First, the initial arrest and charges arose from Singh's suspected involvement in Bormel's sale of heroin to the confidential informant.  The initial arrest and charges were not based on Singh's role in the distribution of heroin to Johnson one or two days earlier. "It would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses."  *United States v. DeTienne*, 468 F.2d at 151, 155 (7th Cir. 1972).

Singh nonetheless theorizes that, for purposes of the Double Jeopardy Cause of the Fifth Amendment, the initial indictment for heroin distribution and conspiracy to distribute heroin "on or about July 12, 2017," should "encompass[]" his conduct on July 11, 2017, including the killing of Johnson.  Even if this theory were correct, the very cases upon which he relies forcefully reject the notion that the speedy-trial right attaches

23

according to the double-jeopardy effect of the charging document.  *See United States v. Black*, 918 F.3d at 255; *United States v. Handa*, 892 F.3d at 105.

Second, Singh's argument fails to recognize that the proceedings resulting from his initial arrest terminated with the entry of a nolle prosequi on February 28, 2018.  The State withdrew those charges after the court granted the motion to suppress evidence and after prosecutors were unable to produce testimony from the informant (the only remaining evidence that had not been suppressed).  Singh does not argue that this dismissal, for lack of inculpatory evidence, was in anything other than good faith.  There is no indication that the purpose or effect of this dismissal was to circumvent Singh's right to a speedy trial.  Consequently, the period of delay does not include any time before the original indictment was issued on March 29, 2018.  *See State v. Henson*, 335 Md. at 338.

The parties also disagree over the appropriate endpoint for measuring the length of delay.  The State proposes that the endpoint should be February 19, 2019, when the court denied Singh's motion to dismiss.  Singh points out that "it is generally the date of trial, not the date of the [trial] court's ruling on a motion to dismiss, that counts as the end date for speedy trial purposes[.]"  *Greene v. State*, 237 Md. App. at 519.  At the time of the ruling, the trial was to begin no earlier than May 13, 2019.  That date, therefore, is the correct endpoint.

The parties do agree, however, on the appropriate disposition if the circuit court used an incorrect measure of the length of delay.  Singh suggests that this Court should "remand the case to the circuit court for it to complete its analysis by applying the *Barker*

24

factors, including hearing any additional evidence or argument the parties may wish to present on these factors." The State agrees and "requests that this Court remand to the circuit court to conduct the *Barker* analysis and make additional factual findings as necessary in connection" with that analysis.

<u>CONCLUSION</u>

On remand, the circuit court should conduct further proceedings for the purpose of re-evaluating Singh's motion to dismiss on speedy trial grounds.

The original indictment of March 29, 2018, triggered Singh's right to a speedy trial on the charges of murder, manslaughter, distribution of heroin, and conspiracy to distribute heroin. As to those charges, the delay includes the period from that date until May 13, 2019, the date scheduled for trial on the superseding indictment. This delay was 410 days (about one year, one month, and 14 days), a duration that is presumptively prejudicial. *See Glover v. State*, 368 Md. at 223. Therefore, the court should analyze that delay under the four-factor analysis established in *Barker v. Wingo*, 407 U.S. at 530.

The analysis is not necessarily the same for the charges added in the superseding indictment based on the same conduct at issue in the original indictment. The new counts alleged the distribution of carfentanil, distribution of a mixture containing heroin and carfentanil, conspiracy to distribute carfentanil, and conspiracy to distribute a mixture containing heroin and carfentanil.

On remand, the circuit court should determine whether the State could have, with diligence, brought the additional charges related to carfentanil distribution on March 29, 2018. If the court determines that the State could have done so, then the starting point as

25

to those charges is the date of the original indictment.  If the court determines that the State could not have done so, then the starting point as to those charges is the date of the superseding indictment.  The scheduled trial date was only 144 days (about four months and 23 days) after the superseding indictment, a duration that is not "of constitutional dimension."  *See State v. Gee*, 298 Md. at 578.

In sum, the court should analyze the factors set forth in *Barker v. Wingo* as to the charges from the original indictment and as to the additional charges from the superseding indictment if the court finds that the State could have, with diligence, brought those charges at the time of the original indictment.

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY IN ACCORDANCE WITH MD. RULE 8-604(D), WITHOUT AFFIRMANCE, REVERSAL, OR MODIFICATION OF THE JUDGMENT, FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY MONTGOMERY COUNTY.**